GUNN'S ADM'R *against* THE COUNTY OF PULASKI.

APPLICATION FOR MANDAMUS.

The county of Pulaski, as well as every other county in this State, is bound to pay for · the board, nursing, medical and burial expenses, of any person who falls sick or dies within its limits, if he have not money or property to pay therefor.

When such expenses have been incurred, the proper county court is bound to make such allowance therefor as may be just.

Such county court must exercise a legal discretion as to the amount to be allowed, but is imperatively bound to exercise jurisdiction of the matter, and adjudicate the case.

If it refuse to make any allowance, the expenses having been confessedly incurred, it will be compelled to do so, by mandamus.

The corporation of Little Rock is not, under any circumstances, responsible for such charges.

Where an inferior tribunal has a discretion, and proceeds to exercise it, that discretion cannot be controlled by mandamus; but if it refuses to act or exercise the discretion, a mandamus lies, to put it in motion.

TRAPNALL and COCKE, for the motion:

R. W. JOHNSON, Atto. Gen., *Contra.*

RINGO, C. J., delivered the opinion of the court:

This is an application, founded on the petition of William Gunn, sworn to by himself, for a mandamus to the County Court of the county of Pulaski, to compel said Court to allow his account for the expenses of burying one Patrick Farrelly.

From said petition, it appears that Farrelly died within the corporate limits of the city of Little Rock, in the month of August, 1839, leaving no money, property, or effects, from which the expenses attending his burial could be paid: that he was buried by Gunn, who incurred and has borne the whole of the expenses incident to his interment: that he had a family in another State, to whom he made remittances; but that he was very poor, and had not been able, whilst sick, to provide himself with shoes and stockings, which were furnished by a friend. That he, Gunn, applied to the then Mayor of the city, to know at whose expense he should be buried, and was told by him that the Mayor had nothing to do with it, but that he must go to

Gunn's Adm's *against* The County of Pulaski.

Thomas Sutton, the city constable, which he did; and that said constable directed him to bury Farrelly, which he did accordingly. That the County Court not being then in session, it was wholly out of his power to obtain an order of said Court for that purpose. That he filed his account in the County Court, for allowance against the county, on the first day of February, 1840, which was duly established before said Court, but the Court refused to allow the same, or order the payment thereof to be made out of the county treasury, upon the ground, as stated in the record of said Court, that " the corporation of the city of Little Rock is bound; that Thomas Sutton, City Constable, is bound for said claim; that it is not such a just claim against the county, as in the opinion of the Court should be allowed and paid out of the county treasury." All of the most important facts set forth in the petition, are established by a duly certified transcript of the record of the County Court, on the motion for said allowance, filed with and made a part of said petition.

The County Court, in refusing to allow this claim, appears to have proceeded upon the ground that it was not a demand which the county was legally bound to pay, and to have. considered and treated it as a legal charge upon the treasury or funds of the city of Little Rock. Testimony to establish the account was adduced, and heard by the Court; and, in our opinion, there can be no doubt that the refusal of the Court to make the allowance, was neither upon the ground that it was unjust or unreasonable, but solely upon the ground that it was not a legal charge upon the county.

We have, therefore, the single question to determine, whether, under the circumstances above stated, the county of Pulaski is or is not legally bound to pay the reasonable burial expenses of such transient poor persons as may have died at that time within the corporate limits of the city of Little Rock, in said county.

On the part of the county, it has been urged that, inasmuch as by law it is provided that " all fines, amercements, and penalties, imposed for offences committed within the city of Little Rock, shall enure to said city, and, when collected, shall be paid over into the hands of the treasurer thereof," it is more consonant to law and justice, that such demands as the one in question should be paid by the city than

the county. See statute approved February 21st, 1838, *Acts* 1837, *page* 65.

On the part of the petitioner, we are referred to *ch.* 110, *sec.* 3, *Rev. St. Ark., page* 606, as establishing the liability of the county. This section provides that " when any non-resident, or any other person not coming within the definition of a pauper, shall fall sick or die in any county in this State, not having money or property to pay his board, nursing, medical aid, or burial expenses, it shall be the duty of the Court to make such allowances therefor as shall seem just."

The first section of this statute enacts, that " every county in this State shall relieve, maintain, and support its own poor, such as the lame, the blind, the sick, and other persons, who, from age and infirmity, are unable to support themselves, who have no sufficient estate of their own, and who have not removed from any other county for the purpose of imposing the charge of keeping them on any county other than the one in which they last lived."

The second section of the same statute requires the County Court, from time to time, and as often and for as long a time as it may be necessary, to provide, at the expense of the county, for the support and maintenance of such poor persons, and order, from time to time, the defraying such expenses, by drawing orders on the treasury of the county.

The provisions here quoted indicate plainly the circumstances under which a person shall be considered a pauper, and become entitled to a support and maintenance at the expense of the county. But there is no pretence that Farrelly was a pauper, within these statutory provisions, or that he was unable to support himself; but, on the contrary thereof, the fact that he not only supported himself, but made remittances to his family in another State, is expressly shown. He is therefore clearly shown to be one of that class of persons expressly provided for by the provisions contained in the third section of the statute above quoted; and the county is expressly bound to pay the expenses of his burial; and the County Court is required to make such allowance for the payment thereof as shall seem just. Therefore, the County Court must exercise a legal discretion as to the amount to be allowed; but

it is imperatively bound to entertain jurisdiction of the matter, and adjudicate the case.

We have carefully examined all of the statutory provisions on the subject, without discovering any thing to warrant the conclusion that the corporation of the city of Little Rock is, under any circumstances, responsible for the charges in question, or that the petitioner has any other appropriate legal remedy for the enforcement of his legal right against the county.

In a case in the Supreme Court of New-York, *ex parte Nelson*, 1 *Cowen*, 423, SAVAGE, Chief Justice, is reported to have said, that "a mandamus is proper where a party has a legal right, and there is no other appropriate legal remedy, and where in justice there ought to be one. But where a discretion is vested in any inferior jurisdiction, and that discretion has been exercised, a mandamus will not be granted, because this Court cannot control, and ought not to coerce, that discretion; nor will a mandamus be granted where error will lie." And in the case of *Hull vs. The Supervisors of the County of Oneida*, 19 *Johns. Rep.*, 260, the same Court is reported to have said, "that the distinction recognized by us is, that where the inferior tribunal has a discretion, and proceeds to exercise it, we have no jurisdiction to control that discretion by mandamus. But if the subordinate public agents refuse to act, or to entertain the question for their discretion, in cases where the law enjoins upon them to do the act required, it is our office to enforce obedience to the law by mandamus, in cases where no other legal remedy exists." The case of *The People ex relat. Wilson vs. Supervisors of Albany*, 12 *Johns. Rep.*, 414, and the matter of *Bright vs. Supervisors of Chenango*, 18 *Johns. Rep.*, 242, exemplify this distinction.

The principles asserted in these cases meet with our approbation fully, and, in our opinion, they are in accordance with, and fully sustained by, the uniform current of decisions, both in this country and in England. See the case of *The King vs. The Justices of Kent*, 14 *East.*, 395; and *The King vs. Archbishop of Canterbury, &c.*, 15 *East.*, 117.

Although it is possible that the petitioner may have some other legal remedy, to enforce the payment of his demand against the

county, we are clearly of the opinion that he has none as adequate or appropriate as this; and therefore his case is within the principles established by the authorities above referred to. The writ of mandamus must therefore be, and it is hereby, granted, to compel the County Court to take cognizance of the demand presented by the petitioner for allowance, and adjudicate the same, and therefore allow to him such sum as shall seem just, and direct the same to be paid out of the county treasury.