Scott, J. The petitioner states that he is a doctor of medicine, and that, in his professional character, he gave medical aid, in personal attention, proscriptions and medicine, in the last illness of one Nicholas Jacobs, deceased, then a citizen of Arkansas county, who departed this life in the month of September, A. D. 1846: that Jacobs was avery poor man, whose estate was wholly insolvent, and not of sufficient value to discharge any portion of petitioner’s claim for medical aid so rendered : That in and at the April term, A. D. 1847, of the county court of that county, he filed his account for those services, and moved for an allowance, but that court refused to take jurisdiction of the case, and refused to permit him to introduce any proof of the rendition of the services and of the other facts upon which his alleged claim is based. To an alternative mandamus, issued from this court, reciting the foregoing statement of the petitioner’s, and commanding said county court to take jurisdiction of the subject matter and adjudicate the same, or show cause for refusal to this court on the 20th day of the last July term, the county court of Arkansas county has made the following return, to wit: That, “ upon examination of the law, and it appearing to the court that Nicholas Jacobs, deceased, for whom the claimant requires payment of an account for medical services rendered to said Jacobs in his life time, and who, as it is alleged, died insolvent, was a resident of Arkansas county for several years prior to his death, and never was a pauper, or considered a poor person, so as to come under the exception to the act of the Legislature of the State of Arkansas, approved the 21st December, 1846, entitled “An act to amend the 110th chapter of the Revised Statutes of Arkansas,” and this court being of the opinion, from the facts before stated, that the account of said M. B. Brem is not authorized by law so as to make it a legal claim against this county, and come under the jurisdiction of this court for liquidation and allowance: they, the undersigned, therefore, refuse to entertain said account, or take jurisdiction of the subject matter therein contained, for causes aforesaid. All which is hereby certified in return to the mandate of said writ. October 18, 1847. THOS. HALLIBURTON, [P- J.] JOHN SMITH, [J. P.] JOHN F. HAMILTON, [J. P.]” And the petitioner, by his counsel, now moves the court for a peremptory mandamus. Recognizing the rule declared in the case of Gunn’s admr. v. The County of Pulaski, reported in 3 Ark. 427, and in Ex parte, Trapnall, reported in 1 Eng. Rep. 9, that where the inferior tribunal has a discretion, and proceeds to exercise it, we have no jurisdiction to control .that discretion by mandamus: but that, if the subordinate public agents refuse to act, or to entertain the question for their discretion in cases where the law enjoins upon them to do the act required, it is our office to enforce obedience to the law by mandamus, in cases where no legal remedy exists, or where clearly none exists so adequate or appropriate as this, for the relief of a party having a clear legal right, we will proceed to the petitioner’s case. The first section of chapter 110, of the Revised Statutes, page 605, enacts that each county in this State shall “relieve, maintain, and support its own poor,” and defines a pauper “ to be such as the lame, the blind, the sick, and other persons, who, from age and infirmity, are unable to support themselves, and who have not sufficient estate of their own.” But expressly excepts, from this obligation thus imposed on each county, all persons of this description who may have removed from any other county for the purpose of imposing the charge of keeping them on any county other than the one in which they last lived.” The second section, after declaring the duty of sheriffs, coroners, and constables, in relation to “ any such poor person or persons as are described in the first section,” declares “that such court, so soon as it shall be satisfied” that such person or persons “comes within the purview and meaning of this act, shall, from time to time, and as often and for as long a time as it may be necessary, provide, at the expense of the county, for the support and maintenance of such poor person or persons, and order from time to time the defraying of such expenses by drawing orders on the treasury of the county.” The third section provides that “ when any non-resident, or any other person not coming within the definition of a pauper, shall fall sick or die in any county in this State, not having money or other property to pay his board, nursing, medical aid, or burial expenses, it shall be the duty of the court to make such allowances therefor as shall seem just.” And the 48th section of the 78th chapter of the Revised Statutes, page 455, enacts that “the father and mother of poor, impotent, or insane persons shall maintain them at their own charge, if of sufficient ability, and the children and grand-children of poor, impotent, or insane parents or grand-parents, shall maintain them at their own charge, if of sufficient ability.” Thus all residents of any county, who are poor persons as defined by the first section of the statute, are to be supported, under the provisions of the second section, at the expense of the county in which they reside, unless such paupers may have removed from some other county for the purpose of imposing the charges for their support on the county to which they may have been removed, or unless the father or mother, or children or grand children, as the case may be, of any such paupers, may be of sufficient ability to defray such charges, in either of which cases the county in which such paupers may reside will be exempt from their support. But the third section provided expressly for another class of persons, embracing non-residents as well as residents, who, although of bodily and mental ability sufficient to support themselves when in health, and could not therefore come within the description of paupers as defined by the first section, might suddenly fall sick, when destitute of means, and encounter extreme suffering and want, and possibly not be afforded a decent bui'ial, and, for remedy, it was by this section made the duty of the county court of the county in which such person might fall sick or die, to make such allowance for board, nursing, medical aid, and burial expenses, as might seem just. This policy, however, although so humane, was found to impose a heavy annual expense upon the counties of this State, and was abandoned by an act of the Legislature, approved the 21st December, 1846, which repealed this section of the statute, and substituted another one which does not embrace any other than non-residents and the case of a person who may be within the definition of a pauper. But the professional services, for which an allowance is claimed by the petitioner, were rendered before the repeal of this provision of the statute, and as his rights cannot be impaired or destroyed by that repeal, and it clearly appearing, by the return of the county court oí Arkansas county to the alternative mandamus,that Jacobs was nota person within the defition of a pauper, we are of the opinion that the petitioner has clearly a lawful claim, for which the county court of Arkansas is bound by law to make such allowance as shall seem just, exercising a legal discretion as to the amount to be allowed. The writ of mandamus must therefore be, and it is hereby, granted to compel the comity court of Arkansas county to take cognizance of the demand of the petitioner presented for allowance, and adjudicate the same, and allow him such sum as shall seem just, and direct the same to be paid out of the county treasury.