## DAVENPORT et al. v. CLOVERPORT et al.

(District Court, D. Kentucky. February 3, 1896.)

1. DISTRICT COURTS—JURISDICTION—DEPRIVATION OF CONSTITUTIONAL RIGHTS —REV. ST. § 563.

A state statute which consolidated two school districts, and established a board of trustees of a high school therein, provided that the trustees might levy a tax upon the white persons in such district; that they should have control of all the school funds of the district; and that all white persons of school age within the district should have equal rights of admission to the schools, free of charge, and the benefit of instruction therein.

It was also provided that no part of the fund raised by such tax should be used to provide school facilities for colored children. The property of colored residents of the district was not subject to the tax. Certain colored children, resident in the district, filed a bill by their next friends, in the United States district court, alleging that the tax had been levied for several years, and that they and other colored children had been excluded from the benefit thereof, and from the schools erected in the district, and praying for a decree adjudging the act unconstitutional, and for an injunction restraining the board of trustees from disbursing the school moneys otherwise than equally for the benefit of all the children of school age, irrespective of color, and requiring them to levy a tax for school purposes on all persons in the district. *Held*, that the United States district court had jurisdiction, by virtue of Rev. St. § 563, subd. 12, to entertain the suit, and to determine whether the complainants were denied the equal protection of the laws.

2. CONSTITUTIONAL LAW — FOURTEENTH AMENDMENT — EQUAL PROTECTION OF THE LAWS.
*Held*, further, that the act levying taxes upon the property of white persons alone, and applying the proceeds of such tax for the benefit of white children alone, denied to the colored children the equal protection of the laws, and was in contravention of the fourteenth amendment to the constitution of the United States, and void.

3. EQUITY PRACTICE—MANDATORY INJUNCTION—UNCONSTITUTIONAL STATUTE.
*Held*, further, that, as the whole purpose of the act was to raise money by taxes, for the benefit of white children alone, and as there was no constitutional authority for the levy of the tax at all, the relief sought by way of mandatory injunction to enforce a disposition of the tax, different from that provided by the statute, could not be granted, and a demurrer to the bill must be sustained. Claybrook v. City of Owensboro, 16 Fed. 301, 23 Fed. 634, distinguished.

In Equity. Bill by W. B. Davenport, Anderson De Haven, Wesley Valentine, Bessie Davenport, Ella De Haven, and Amelia Valentine (the latter three, being infants, under 20 years of age, sue by the former, as their next friends) against the board of trustees of the Cloverport High School, a corporation created by the laws of the commonwealth of Kentucky, and A. B. Skillman, the treasurer of said board. Heard on demurrer to the bill. Dismissed.

George W. Jolly, for complainants.
David R. Murray and D. W. Fairleigh, for defendants.

BARR, District Judge. This suit was brought by the complainants, who are of African descent, and citizens of the United States, and who bring the suit by their next friends, they themselves being colored children of school age, under the laws of the state of Kentucky. The bill sets out that by an act of the legislature adopted February 23, 1876, there was a consolidation of two school districts, which embrace the town of Cloverport, and created the board of trustees of the Cloverport High School, to be elected by the white qualified voters of said district; and that there was authorized, upon the request of said trustees, a levy upon the property, real and personal, of the white persons in said school district, not exceeding 50 cents on each $100 value of property, and a tax per capita, not exceeding $2 on each white male 21 years of age. The said tax was not to be levied unless, at an election held for that purpose, a majority of the white voters authorized the levy of said tax. By this law, the property of the colored people and the poll tax of col-

ored voters were not subject to taxation for said purpose. Said board was also authorized to receive from the school commissioner of Breckenridge county the proportion of the school fund due said district. It is alleged in the bill that, under said law, a board of trustees had been elected, and that the defendant Skillman is the treasurer of said board, and that for a series of years, including 1893 and 1894, a tax has been levied and collected upon the property, and a poll tax, of the white persons in said school district. By the tenth section of the law of 1876, it is provided "that the control and management of the public schools of Cloverport, and the property and funds belonging thereto, and which may accrue in any way to them, or for their establishment, maintenance and management under this act, or otherwise, shall be vested in said board of trustees and their successors in office"; and, by the eleventh section, "all white persons of both sexes between 6 and 20 years of age, living within the district constituted by this act, shall have equal rights of admission to this school, free from all charge of admission, or tuition, whatever, and the benefit of instruction in any branch or department whatever without charge"; and it is expressly declared that only white children shall be admitted or taught in said school. It is provided that the special tax authorized by said act shall be levied for the sole purpose of providing suitable buildings, furniture, teachers, and other costs and expenses of maintaining said school, as well as the expenses of having said taxes collected and disbursed, and paying the legitimate expenses of the board and its employés, but that no part of said fund is to be appropriated to provide buildings, furniture, teachers, etc., for colored children of the school age in said district.

The bill sets out that a considerable amount of taxes has been collected by said board, and received by said Skillman, treasurer, from taxes levied under said act, in the years 1893 and 1894, and that said complainants and all other colored children have been excluded from the benefit of any tax thus collected. It is also alleged in the bill that there is received annually, from said taxes, under the enactment of 1876, a sum exceeding $4,000; and that it should be divided and apportioned equally among and for the benefit of all the children residing in said district and said Cloverport who are of school age,—that is, between 6 and 20 years of age; and that there are in said district 672 children, white and colored, of school age; and that there should be apportioned and set apart for the benefit of each colored child the same as white, to wit, $1/672$ part of said fund received by said trustees and treasurer. It is also alleged in said bill that a commodious school, costing some $10,000, has been erected for the white children of school age, and that no provision whatever has been made, by building or otherwise, for the accommodation of the children of African descent. The prayer of the bill is that the said act of February 23, 1876, and the general act of July 6, 1893, be declared unconstitutional and void in so far as they attempt to make any discrimination between the white people and people of the African race residing in

said city and district, or the property belonging to said people, and the levying of taxes on said property, or the collection or disbursement of the same for school purposes, or in the disbursement of any fund received or held by the defendants from any source whatever, "and that the said defendants be restrained by an order of this honorable court, and perpetually enjoined, from failing or refusing to disburse all moneys now in the custody or control of the defendants, and all moneys that may be received by them hereafter for the conducting or carrying on schools exclusively for white children, and from disbursing said funds now in their custody, and which may be hereafter received, otherwise than equally among all children residing in said district and city, between the ages of 6 and 20 years, irrespective of race or color of said children." And they further pray that the defendants be further restrained and enjoined from failing or refusing to forthwith levy and collect, under and pursuant to the provisions of said act and the general laws of the commonwealth of Kentucky, a tax upon all property, real and personal, situate in said district, etc., and a capitation tax on all persons residing in said district, and forthwith purchase a suitable lot, and cause the erection thereon of a good and substantial school building for the accommodation of all the children of the African race aforesaid.

This bill has been demurred to by the defendants, "because the matters and things in the bill alleged are not sufficient to constitute a cause of action against them, or either of them, nor can the court, upon the matters and things in the bill alleged, grant the relief prayed for, nor any other relief." It will be seen the purpose of the bill seeks a mandatory injunction, not to enforce the law of February, 1876, but to declare it unconstitutional, and, in effect, applying its provisions to colored children as well as to white children.

The first inquiry under the demurrer is whether or not the court has jurisdiction of the subject-matter therein alleged. By the twelfth subdivision of section 563 of the Revised Statutes it is provided by congress that the district court shall have jurisdiction "of all suits at law or in equity" authorized by law to be brought "by any person to redress the deprivation, under color of any law, ordinance, regulation, custom or usage of any state, of any right, privilege or immunity secured by the constitution of the United States, or of any right secured by any law of the United States to persons within the jurisdiction thereof." And by section 716 the circuit and district courts are given power to issue all writs not specifically provided for by statute "which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." And by section 1977 it is provided "that all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens; and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions

of every kind, and to no other." And by section 1979 it is provided that every person "who under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects or causes to be subjected any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law or suit in equity, or other proper proceeding for redress." The first section of the fourteenth amendment to the constitution of the United States declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These provisions would seem to give the court jurisdiction to determine whether the complainants are denied equal protection of the laws, and whether or not they have been unconstitutionally discriminated against in the matter of the taxes which have been levied under the act of 1876 against the property of the white persons alone, and which have been distributed to the white children of the school age, to the exclusion of the colored children of said district.

We think there can be no doubt that a tax levied for school purposes, whether to provide and maintain common schools, or for what are designated as graded schools, is a public purpose, and the levy of such taxes can only be sustained as an exercise of governmental power. Indeed, the present constitution of Kentucky has declared that "taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax." Section 171.

This court has heretofore had occasion to consider whether a tax levied upon the property of white persons for school purposes, and a similar tax levied upon the property of colored persons for the same purpose, could be separated, and the taxes collected from the property belonging to white persons applied exclusively for the benefit of white children of school age, and the taxes collected from the property of colored persons applied for the benefit of colored children of school age in the same district; and the court decided, after careful consideration (Judge Baxter concurring), that such a division and distribution of taxes thus levied and collected would be a discrimination which is prohibited by the fourteenth amendment to the federal constitution. In that case (Claybrook v. City of Owensboro), in considering the fourteenth amendment to the federal constitution, the court said:

"Waiving all considerations of the question as to the rights of the complainants as citizens of the United States, we proceed to inquire whether the act of 1871 and its amendments deny to complainants the equal protection of the laws within the meaning of this section. It may be argued that equal

protection of the law does not mean the equal benefit of the laws; that protection in this section does not mean benefit; and that the inequality here is only in the benefits arising from the laws. Perhaps, the best way to test the soundness of this distinction as applied to the laws of the state would be to imagine the distinction a good one, and see where it would lead. Thus, if protection only means equal taxation, and not equal benefits of the taxes when levied and collected for governmental purposes, the state may apply such taxes not only according to color, but also according to the nativity of the citizens. Thus, taxes levied and collected for police purposes, for the administration of justice, or the enforcement of the criminal laws, or, indeed, for any other governmental purpose, may be distributed by the color line, or, as between white people, according to their place of birth, or in proportion as taxes may be paid by each class. If the taxes can be distributed according to the color line or race classification, no reason is perceived why the division may not be made according to the amount paid by each taxpayer, and thus limit the benefits and distribute the protection of the laws by a classification based upon the wealth of the taxpayers. Such a distribution of taxes would entirely ignore the spirit of our republican institutions, and would not be the equal protection of the laws, as understood by any of the states of this Union at the time of the adoption of this amendment. The equal protection of the laws is not possible if taxes levied and collected for governmental purposes are divided on any such basis. The equal protection of the laws guarantied by this amendment must and can only mean that the laws of the state must be equal in their benefits, as well as in their burdens, and that less would not be the equal protection of the laws. This does not mean absolute equality in distributing the benefits of taxation. That is impracticable. But it does mean the distribution of the benefits upon some fair and equal classification or basis."

See Claybrook v. City of Owensboro, 16 Fed. 301, and also another opinion in same case, 23 Fed. 634; U. S. v. Buntin, 10 Fed. 730; San Mateo Co. v. Southern Pac. R. Co., 13 Fed. 722; Virginia v. Rives, 100 U. S. 313; Ward v. Flood, 48 Cal. 51.

In the case under consideration, no tax was either authorized or levied under the act of 1876 on the property of colored people, but this fact makes no difference in the principle which was decided in the case of Claybrook v. City of Owensboro, supra.

It may be questionable whether this act of February, 1876, is not also a violation of the present constitution of Kentucky, which, under the head of "Education" (section 183), declares that "the general assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state," and, by section 187, declares: "In distributing the school fund no distinction shall be made on account of race or color, and separate schools for white and colored children shall be maintained." But this is a question upon which we do not feel called upon to indicate an opinion, as this court can only take jurisdiction of the case if the act of 1876 is in violation of the federal constitution.

Assuming, then, that the act of 1876 is unconstitutional, the inquiry arises, can this court grant any of the relief prayed, to the complainants? The difficulty in granting the relief sought is not that the act is constitutional, but that it is unconstitutional, and thus the taxes which have been levied and collected under it, and are now in the hands of the treasurer of the board, Mr. Skillman, cannot be controlled or directed by an order of this court. The whole purpose of this act seems to be to raise money by taxes upon the

property of white people alone, for the benefit of white children of school age exclusively; hence, if this court, as suggested by counsel, should strike out the word "white" where it occurs in this act, it would change the entire meaning of the act, and destroy its sole purpose. This would be, it seems to us, a usurpation of legislative authority of the state of Kentucky.

If we are correct in the opinion that these taxes have been collected without authority of law, then they belong to the taxpayers from whom they have been collected, and cannot be controlled or disposed of by this court. It is true there are many cases in which courts have declared parts of a law unconstitutional, and other parts constitutional; but this is only when the act can be distinctly separated, and when the parts of the act which are unconstitutional have been eliminated, will still leave an effective enactment, and one which the court can fairly presume would have been passed by the legislature originally.

It is said in Anderson v. Railroad Co., 62 Fed. 49:

"Where the provisions of an act are distinct and separate, and the court can determine by construction the constitutional parts of the act from the parts which are unconstitutional, and can presume the legislature would have enacted the constitutional part of the act without the unconstitutional part, it may declare a part of the act unconstitutional, and the other part enforceable." Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. 656, 763.

It is true, in the case of Claybrook v. City of Owensboro there was a proportion of the taxes which had been levied enjoined from being applied for school purposes for white children, but there the tax which had been levied, although by separate acts, was an equal tax upon the property of both white and colored people, and the unconstitutionality of the act consisted in the unequal distribution of the tax levied and collected, in that the division was attempted by the law upon the color line. But here there is no constitutional authority for the levy of the tax at all; hence the court cannot grant to the complainants the relief prayed for. And, for the reasons stated, the demurrer must be sustained; and it is so ordered, and bill dismissed.