HON. A. G. CURTIN BIERER,
HON. JNO. L. M'ATEE,
HON. JOHN C. TARSNEY,
HON. JAMES R. KEATON,

} ASSOCIATE JUSTICES.

---

ROBERT PORTER, *et al.* v. COMMISSIONERS OF KINGFISHER
COUNTY, *et al.*

(Filed January 12, 1898.)

1. SEPARATE SCHOOL BOARDS—*Act Pertaining to, Inoperative.* Article
   1, ch. 34, Session Laws, 1897, providing for the election of separate
   school boards ·for the white and colored people within each
   school district, the school boards for the whites to be composed
   of white persons who are qualified school district electors, and
   the school boards for the colored people to be composed of
   colored persons who are qualified school district electors, and
   that each board shall be elected by the qualified electors of their
   own race, and clothing both of said boards with the same powers
   and jurisdiction respecting the levying of taxes, the manage-
   ment and control of the school property of the district, the
   issuing of bonds in proper cases, etc., is inoperative, because
   of the uncertainty and inconcistency of its various provisions,
   and is also unconstitutional, being in conflict with the fifteenth
   amendment to the constitution of the United States, and the

following provision of sec. 5 of the Organic Act of this Territory, to-wit: "There shall be no denial of the elective franchise or of holding office, to a citizen, on account of race, color, or previous condition of servitude."

2. SEPARATE SCHOOLS—*Laws in Force.* Although said art. 1, ch. 34, Session Laws, 1897, contains a provision purporting expressly to repeal art. 8, ch. 73, Statutes, 1893, yet, as the former enactment is unconstitutional and void, the latter is in no wise affected thereby, but remains in full force and effect.
(Syllabus by the Court.)

## Original Proceeding in Mandamus.

*J. C. Roberts*, for relator.

No appearance, per contra.

This action is brought by Robert Porter, for himself and all other persons similarly situated, as an original proceeding in *mandamus* in this court, against the board of county commissioners of Kingfisher county, Oklahoma, and J. B. Cockrill, county clerk of said county, to compel the said board of county commissioners to levy a suffic'ent tax to maintain separate schools for the colored children of said county, and to provide them with the same facilities as those provided for the schools for white children, and to compel the county clerk to spread said levy upon the tax rolls of said county immediately after the same is made by the board of county commissioners.

The material averments of the petition are, that the said Robert Porter is a colored man and a resident of Kingfisher district, within said county and Territory, is the head of a family and the father of three children within the scholastic age; that, in accordance with the requirements of sec. 2, art. 8, ch. 73, Oklahoma Statutes, 1893, an election was held on the 12th day of May, 1896,

for the purpose of determining whether or not separate schools should be maintained in the said county of Kingfisher for white and colored children; that at such election 949 votes were cast in favor of such separate schools and 888 votes against the same; that in the month of July, 1896, and in pursuance of the provisions of sec. 3, art. 8, ch. 73, Oklahoma Statutes, 1893, the board of county commissioners made a levy of four mills on the dollar on all the taxable property in the said Kingfisher county for the suport and maintenance of such separate schools for the ensuing scholastic year; that the funds derived by reason of this levy have long since been exhausted and said board of county commissioners have wholly failed and refused to make any further levy for such purpose, as is shown by the minutes of their proceedings of July 16 and 17, 1897, on the former of which days a levy of three mills on the dollar was made for separate schools, and on the latter the following proceeding was had: "It was moved by Davis, and seconded by Mehew, that the three mill levy made for separate school purposes be reconsidered and stricken out, and that no levy be made for separate school purposes.Motion prevailed, McDowell voting no;" and, as a consequence, there are now no means whatever provided for the support and maintenance of such schools; that there are 955 colored children between the ages of 6 and 21 years residing in said county entitled to attend the separate schools thereof.

None of the facts alleged in the petition and affidavit for the peremptory writ of *mandamus* is denied, but respondents rely entirely upon the provisions of art. 1, ch. 34, session laws, 1897, for a defense to this action.

Opinion of the court by

KEATON, J.: As clearly appears from the foregoing statement, the only controverted question presented in this case is one of law and requires a determination of whether or not said art. 1, ch. 34, session laws, 1897, is valid. So much of this enactment as is necessary to be considered in order to properly pass upon the question as to whether it is valid or invalid, is as follows:

"SECTION 1. Whenever there shall be as many as eight colored children in any school district in the Territory of Oklahoma, there shall be a district formed for the education of colored children in the same manner and upon the same application as other school districts are formed, and they shall hold their annual school meetings and elections, and elect their own school officers in the same manner as other school meetings and elections are held.

"SEC. 2. When pro-rating the school money among the various districts of his county, it shall be the duty of the county superintendent of public instruction to include the colored districts and apportion the same among all the districts, both white and colored, according to the number of children of school age.

"SEC. 3. In any district where the colored children are in the majority, and there are as many as eight white children of school age, the whites of said district shall organize a white school district in the same manner as provided for the formation of colored districts.

"SEC. 4. When the taxes are levied and collected for the support of schools of the district, the taxes so collected shall be pro-rated between the schools of the district, according to the number of school age in each.

"SEC. 8. When separate schools are established as provided in this act, the term of school shall be the same in each school year, and shall be provided with equal school facilities. * *

"Sec. 9. It shall hereafter be unlawful for any white child to attend a colored school, or for a colored child to attend a white school.  *   *

"Sec. 10. Article 8, ch. 73, of the Statutes of 1893, all laws and parts of laws in conflict with the provisions of this act, are hereby repealed."

We think the foregoing enactment is void for several reasons, among them being the following: First, its provisions are so uncertain, inadequate and inconsistent with each other as to render it wholly imposible of enforcement.  Second, it is in conflict with both the letter and the spirit of the fifteenth amendment to the constitution of the United States.

It is only necessary to call special attention to a few o. the provisions of this statute to show that its enforcement is utterly impossible.

Where there are as many as eight white or colored children in any school district, a separate district must be formed within the same boundaries, with a separate school board, and the members of the school board for the white people of said district must be white persons and qualified school electors thereof, and the members of the school board for the colored children must be colored persons who are qualified school electors of such district, and the members of each separate school board must be elected by those of their own race who are qualified electors in said district; and the duties, powers and jurisdiction of each board is, so far as ascertainable, precisely the same with reference to the levying of taxes for school purposes, ordering an election upon proper application for the purpose of determining whether or not the district shall be bonded, bonding the district in

proper cases, and the control and management of the school property thereof.   (See secs. 1 and 3 of said enactment, and also general secs. 5792, 5796, 5897, 5805, 5810, 5823 and 5824, Statutes 1893.)

That these two boards cannot legally exist and exercise the same or like powers, over the same territory, at the same time, is, it would seem, too well settled, both in law and reason, to need further comment here.

"There cannot be two municipal corporations for the same purposes, with co-extensive powers of government, at the same time over the same territory." (American & Eng. Enc. Law, 1007, and authorities cited in note 2.)

"The proposition that two independent governments cannot exercise the same powers, within the same district, at the same time, is a self-evident one." (*Taylor v. Ft. Wayne,* 47 Ind. 281.)

"There cannot be two such effective corporations in the same place; for, instead of good order, that would only be productive of anarchy." (*King v. Pasmore,* 3 Term Reports 243.)

"There cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdictions, and privileges." (Dillon's Municipal Corporations, sec. 184 and note 1.)

"It is certainly true that there cannot be, at the same time, two municipal corporations in the same place, exercising the same or similar powers, jurisdiction and privileges." (*Patterson v. Society,* 24 N. J. Laws 399.)

But, suppose we endeavor to avoid the consequences of holding that sections one and three of the enactment under consideration authorize and require the creation of two school boards with equal and co-extensive powers in so far as the levying of taxes for school purposes, etc., are concerned, by construing these sections to mean that the

school board for the white shall levy all school taxes upon the property of the white people of the district, and the colored school board shall levy such taxes upon the property of the colored people of the district, and also that the school taxes paid by the white people of the various districts shall be applied to the support of the schools for white children and the taxes paid by the colored people cf said districts applied to the support of the schools for colored children; then the enactment is in contravention of the fourteenth amendment to the constitution of the United States, and void. (*Claybrook v. City of Owensboro,* 16 Fed. 297.; *Davenport v. Cloverport,* 72 Fed. 689.)

However, under any interpretation that can be given this statute, it is clearly in violation of the fifteenth amendment to the constitution of the United States which declares that "the right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any state, on account of race, color or previous condition of servitude," and also of the Organic Act of this Territory which provides in sec. 5 thereof, that, "there shall be no denial of the elective franchise or of holding office, to a citizen, on account of race, color, or previous condition of servitude."

Section 2004 of the Revised Statutes, U. S., enacted by congress in pursuance of the authority given by the fifteenth amendment to the federal constitution, is as follows:

"All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any state, territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all

such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any state or territory, or by or under its authority, to the contrary notwithstanding."

The act under consideration unquestionably provides for separate elections for the white and colored school boards in every school district in the Territory, and also that no white elector shall become a member of or vote for members of the colored school board, and no colored elector shall become a member of or vote for members of the school board for the whites. These provisions are clearly within the inhibitions declared by the constitutional amendment and acts of congress just quoted.

In *McKay v. Cambell,* 16 Fed. Cases 157, it is held by Judge Deady that:

"Under the fifteenth amendment to the constitution and the act of May 31, 1870, (16 Stat. 140,) to enforce it, all persons declared citizens of the United States by the fourteenth amendment are entitled to vote in the states where they reside, at all elections by the people, without distinction of race, color, or previous condition of servitude."

In *United States v. Reese,* 92 U. S. 214, it is held that: "The fifteenth amendment to the constitution does not confer the right of suffrage; but it invests citizens of the United States with the right of exemption from discrimination in the exercise of the elective franchise on account of their race, color, or previous condition of servitude, and empowers congress to enforce that right by 'appropriate legislation.'" (See also *United States v. Cruikshank,* 92 U. S. 542.)

Again, each school board in a country district must consist of a director, clerk and treasurer, each of whom

shall be a qualified school district elector. (General secs. 5771 and 5777, Stat. 1893.) Each city of the first class shall constitute a separate school district, and there must be a board of education elected by the qualified school district voters of such city, said board consisting of two members from each ward thereof. (General secs. 5831 and 5836, Stat. 1893.) By the provision of the enactment under consideration, a separte school board must be selected from each race when there are as many as eight white and colored children within any school district. There are, doubtless, several school districts in this Territory containing as many as eight colored children within scholastic age, and yet not containing a sufficient number of persons of that race who are qualified to act as members of the school board.

Furthermore, under the provisions of the article in question, the school funds shall be pro-rated, by the county superintendent, among the various country school districts of his county, "both white and colored, according to the number of school age," and "the term of school shall be the same in each school year, and shall be provided with equal school facilities."

It will be seen at once that these provisions are wholly inconsistent with each other and absolutely impossible of enforcement. For instance, a certain school district in Kingfisher county may contain eight colored children and fifty white children. In accordance with the provisions of the article in question, two districts must be formed covering the same territory; the length of the schools in these two districts must be the same for each year and each must be supplied with equal school facil-

ities, and yet, all the money belonging to said two districts covering the same territory must be distributed pro-rata in proportion to the number of children of scholastic age.   Suppose this fund amounts to $5 per capita; then the colored school will receive $40, and the white school $250.

We are not unmindful of the rule holding that a law should not be declared invalid because extreme cases, to which such law could not be applied, may be supposed; but it is obvious that the inconsistent provisions just referred to, of the enactment under discussion, could only be enforced in such districts as contain substantially an equal number of white and colored children within school age; and it seems to the writer that this court must judicially know that the number of districts, containing substantially an equal number of children of the different races within the scholastic age, is exceedingly small in proportion to the total number of districts in the Territory; hence there would be few districts which could, under such a distribution of the school funds, provide separate schools, with the same length of terms and equal school facilities, for the white and colored children.

Unless the different provisions of a statute are sufficiently definite and consistent to enable the courts to so construe same as to give the enactment a meaning whereby it may be enforced, that is, made to accomplish the purpose for which it was enacted, it must be held to be inoperative for ambiguity and inconsistency.   (Sutherland on Statutory Construction, sec. 261.)

For the reason stated, we must hold that said art. 1, ch. 34, Session Laws 1897, is invalid.   It follows that art.

8, ch. 73, Oklahoma Statutes, 1893, remains in full force and effect, for, if a statute, which purports to repeal a prior one, is itself void, said prior statute is, in no wise, affected by the attempted repealing enactment. (Sutherland on Statutory Construction, sec. 261.)

"Where a repeal of prior laws is inserted in an act in order to the unobstructed operation of such act, and it is held unconstitutional, the incidental provision for the repeal of prior laws will fall with it. An act was passed to dissolve municipal corporations and provided the manner in which they might be reincorporated. The latter was the object of the enactment, and that being held unconstitutional the former was also invalid." (Sutherland on Statutory Construction, sec. 175. See also *Quinlon v. Rogers*, 12 Mich. 168; *Childs v. Showers*, 18 Io. 261.)

The peremptory writ of *mandamus* prayed for by relator is, therefore, granted, and the board of county commissioners of Kingfisher county directed, at once, to make a sufficient levy upon all the taxable property of said county for the support and maintenance of the separate colored schools thereof, in accordance with the provisions and requirements of said art. 8, ch. 73, Oklahoma Statutes, 1893.

All the Justices concurring.