THE BOARD OF EDUCATION OF THE CITY OF KINGFISHER, IN KINGFISHER COUNTY, OKLAHOMA TERRITORY v. THE BOARD OF COUNTY COMMISSIONERS OF KINGFISHER COUNTY, OKLAHOMA TERRITORY.

(Filed September 2, 1904.)

1. SEPARATE SCHOOLS—County not to Erect School Building Where District Already has one. A statute which divides school children into two classes, white and colored, and which requires the creation of a county school fund for the use and benefit of the minor class, and confers upon the board of county commissioners power to receive title for school sites and build school buildings for the minor class, and further provides that where at the time of the passage of the act any school district then had a school house for the minor class, the county shall be at no expense on account of school houses in that district, but the school district at its own expense shall keep such house in repair and rebuild the same if destroyed, is mandatory, and injunction may issue to prevent disposal thereof by the district.

2. SAME—Statute Valid. Such statute is not unconstitutional or void because of interference with property rights without just compensation.

3. DISTRICT SCHOOLS—Property of. School districts in the levy and collection of taxes for the building of school houses, act in such respect on behalf of and under the authority of the Terri-

tory, exercising thereby a part of the general sovereignty which the Territory exercises over its entire domain, and property rights so acquired do not belong to the district independent of the Territory.

4. EDUCATION—District Concerned in Education of all Children. School districts which include cities of the first class have equal concern in the education of all children of school age in the district, without regard to race distinction, and without special statutory authority may erect in the district such buildings as may be by the district deemed advisable for the use of the different classes, white and colored, regardless of the question as to whether or not they had the legal right to prohibit colored children from attending a white school.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before Clinton F. Irwin, Trial Judge.*

*F. L. Boynton,* for plaintiff in error.

*Geo. L. Bowman,* for defendant in error.

STATEMENT OF FACTS.

This action was commenced in the district court of Kingfisher county, by filing therein a petition for injunction as follows:

"Comes now the above named plaintiff by G. L. Brown, the county attorney of said county, and the agent thereof for the purpose of bringing this action, and for cause of action against the defendant alleges:

"That on May 12, 1896, the voters of Kingfisher county by a vote of nine hundred forty-nine (949) for, and eight hundred and eighty-eight (888) against, established separate schools for the education of white and colored pupils in Kingfisher, Oklahoma Territory. That in the city of Kingfisher the board of education under its township organization, and before the township organization was changed, un-

der the laws organized and maintained a separate school for colored pupils, having commenced that practice in September, 1892. This practice was continued during subsequent years.

"Up to August, 1895, the board of education had not become the owner of the fee to any real estate in this city, but had rented land on which they maintained schools in buildings erected by them.

"The first school building erected in the city of Kingfisher was erected upon lots 3, 4, 5 & 6, in block 64, of that part of the city of Kingfisher platted as North Kingfisher in 1893, and was used by the board of education for white pupils until 1898.

"The board of education of 1893 also erected on East Broadway a building for the use of colored schools, at an expense of four hundred and thirty and no-100 dollars ($430.-00). This was used until the fall of 1898, at which time the board of education of the city of Kingfisher erected a building of brick for the use of the white pupils of the city. At the time of the completion of the said brick building, the board of education moved the building heretofore mentioned as having been erected on East Broadway on lots 3, 4, 5, & 6, in block 64, North Kingfisher, (to which lots defendant acquired title by purchase in November, 1898) and added one story to the same, and annexed it as a wing to the building which was already on said lots, and which had previously been used as a white school as hereinbefore alleged, and from and after January 6, 1899, the said buildings as thus enlarged and consolidated on lots 3, 4, 5, & 6, in block 64, in North Kingfisher, were with the knowledge and by direction of the board of education of the city of Kingfisher, constantly used for the education of the colored pupils of the City of Kingfisher, and the same have been so used up to the present time. That the said buildings are conveniently located for the colored population of the city of Kingfisher,.

and that the colored pupils of the city are fewer in number than the white pupils therein.

"That the amount of money which the board of education of the city of Kingfisher has expended in the construction and the improvement of the said building is the sum of about three thousand dollars.

"That the board of education of the city of Kingfisher is now about to sell the said lots 3, 4, 5 & 6, in block 64, North Kingfisher, together with the improvements thereon, and has advertised the same for sale to the highest bidder for cash, to take place on the 15th day of June, 1903, at 2:00 P. M., a copy of the advertisement being hereto attached, marked "Exhibit A" and made a part hereof.

"Your petitioner further informs the court that if said board of education of the city of Kingfisher is allowed to sell said lots with the buildings thereon, the city of Kingfisher and the school district therein will be deprived of a school for the colored children within the city.

"Your petition further informs the court that prior to the passage of the act entitled 'Separate Schools,' which was approved on March 8, 1901, the school districts in said Kingfisher county, where there were both white and colored children of school age, many if not all built separate school houses, one for colored and for white children of such school districts, and under said law existing prior to March 8th, 1901, such districts built and maintained separate school buildings.

"Your petitioner further says that unless the board of education of the city of Kingfisher is restrained from selling said school-house and site the colored children of said district will be deprived of a school-house and that your petitioner has been informed and believes that the board of education of Kingfisher county will not build another school house in the place or in lieu of the one they are offering to sell, and that the board of county commissioners of King-

fisher county believes that it cannot legally make a levy for building school houses for that class of children white or colored that are fewer in number in such districts.

"Your petitioner further says that under the law the board of county commissioners believes it cannot build a school house in said district where there is already one built and used for school children that are fewer in number in any school district after the passage of the act of March 8, 1901, and that the board of education of Kingfisher city are trying to sell and dispose of the property above referred to, not for the purpose of building a school house for colored children, but for the purpose of converting said property into cash to be used in building and maintaining a school house for the white children within said district, and that your petitioner under these circumstances and conditions has no adequate remedy at law and for all of the above reasons asks for a restraining order, restraining said board of education from selling the property set out in this notice.

"Wherefore your petitioner prays that the said board be enjoined from in any manner selling or disposing of the lots 3, 4, 5 & 6, in block 64, in North Kingfisher, with the improvements thereon, until they provide a building sufficient and suitable for the accommodation of the colored children of school age within said school district.

"George L. Bowman, County Attorney,
"Attorney for plaintiff."

"Territory of Oklahoma, Kingfisher county, ss. George L. Bowman, being duly sworn, on oath says that he is the county attorney and agent for the plaintiff in the above entitled action, and that he is authorized to bring this suit and to make this affidavit, and that he has read the above entitled petition, and knows the contents thereof, and that the things therein contained are true.

"George L. Bowman.

"Subscribed and sworn to before me this 15th day of May, 1903.

"E. M. Hegler, Clerk,
"By George H. Laing, Deputy."

To which the defendant named filed the following answer:

"Comes now the defendant in the above entitled action and for answer to the plaintiff's petition alleges:

"That it admits each and every allegation of fact contained in the plaintiff's petition, and denies the conclusions of law stated therein.

"Wherefore the defendant asks judgment for costs, and for the dismissal of plaintiff's petition.

"F. L. Boynton,
"Attorney for defendant."

Opinion of the court by

GILLETTE, J.: It will be seen from the petition and the answer admitting all the facts stated in the petition, that no question is presented other than the one naked legal proposition, to wit:

Has the plaintiff in error, the board of education of the city of Kingfisher, O. T., power to sell and dispose of lots 3, 4, 5 & 6, in block 64, North Kingfisher, and the school buildings thereon situated, used and occupied as a separate school for colored children, for the purpose of converting said property into cash to be used in building and maintaining an addition to the school house for the white children in said district?

Upon a hearing had before the district court of Kingfisher county, an order and judgment was entered in the case which forever and perpetually restrained the board of education from selling the building on said lots or remov-

ing it therefrom except for the purpose of rebuilding or erecting in its place suitable buildings for the use of separate schools for colored pupils in the city. To this judgment and order the school board excepted at the time, and have now brought the case to this court, alleging that the court committed error in awarding and entering such judgment, and pray for a reversal thereof, and an order dismissing the petition in the court below.

On the 8th day of March, 1901, there was passed by the legislature of Oklahoma and approved, "An act providing for the establishment and maintenance of separate schools for white and colored children and for other purposes."

Sec. 1 provided that in all counties separate schools for white and colored children should be and therefore were established, to be perpetually maintained by the levy of a county tax sufficient to maintain the same.

Sec. 2 provided that in any school district where the number of white or colored children does not exceed ten, and they can be transferred to schools of their own color in adjoining districts, no separate schools shall be maintained.

Sec. 3 provides the manner in which children may be transferred to other districts when the number is ten or less.

Sec. 4 directs that the county superintendent immediately after the passage of the act ascertain what districts of his county have separate schools, the number of children in each, what districts have erected school houses for both white and colored children, and report the same to the board of county commissioners.

Sec. 5 provides the manner in which the board of county commissioners may supply separate school houses in any district where they are needed or desired.

Sec. 6 provides for their equipment.

Sec. 8 provides for the employment of teachers for separate schools.

Sec. 9 provides for the payment of such teachers, and concludes with a proviso as follows:

"And provided further: That such school house so built by the county may be built in any part of said district which in the judgment of the board of county commissioners will be most convenient to the greatest number of children for whom it is intended; and for such purpose, such board of county commissioners may receive title to a proper school site, by gift, purchase, or proceedings to condemn the same in the same manner and with like effect as when such actions are brought by school districts.

"Such county shall not be at any other or further expense on account of such building, but the school district, at its own expense shall keep such house in repair and rebuild the same if destroyed. The county shall be at no expense on account of school houses, or repairing, where districts at the passage of this act have school house or houses for that class of children, white or colored, that are the fewer in numbers in such district."

The judgment of the court below is in accord with the foregoing provisions of the statutes.

That law when passed by the legislature was manifestly passed with the intent to require separate schools for white and colored children, and while it is general in its terms, applicable alike to each, it is a matter of common knowledge and understanding that in almost every school district of the Territory of Oklahoma, colored school children are

fewer in number than the whites. Probably in the great majority of the school districts there is not one colored child of school age. The law must therefore be considered as a law providing for the education of the colored children of this Territory, and protecting them in that right, which educational right under the peculiar institutions of this country, is now looked upon as being an almost inalienable right. The legislature has the power to provide in what manner such right shall be preserved. It is within the power of the legislature to delegate to districts the power of government in school matters, which are properly such districts as may be designated by statute. A school district, a township or a county may be designated as the local governing body in matters of that kind, but all of their powers are derived from the legislature, and can only be exercised according to legislative will.

It is proper, therefore, and a matter of legislative right, to change all or any portion of the school system of the Territory; and where it is found, as in the present case, necessary or desirable to provide specially for the school privileges of a particular class of school children, the legislature may do so under the provisions of a general law, which does not confer upon any class special privileges, but is open alike to all children coming within the terms of its provisions.

Owing to the few in number in one of the classes designated under the present law, the legislature has seen fit to place the general control of educational matters pertaining to that class in the hands of the boards of county commissioners, and the general expense to be a burden upon the

tax payers of the county generally, as distinguished from the ordinary method of conducting school affairs, and in doing so enacted the last provisions of the statute above quoted, to wit:

"The county shall be at no expense on account of school houses or repairing, where districts at the passage of this act have school house or houses for that class of children, white or colored, that are fewer in numbers in such district."

The board of education of the city of Kingfisher, at the passage of the act, had such school house, which at the time of bringing this action was by said board advertised to be sold with the intention of appropriating the proceeds to the improvement of the school facilities for white children, and which act is enjoined by the judgment of the lower court.

It is now urged by the plaintiff in error that if the provisions of said law justify such judgment, the law itself is unconstitutional and void, because it provides for interference with property rights without just compensation in damages. We will examine both these propositions.

First, does the law justify the judgment of the court below in the order enjoining the board of education of the city of Kingfisher from disposing of the property except for the purpose of rebuilding suitable buildings for separate schools for colored children in that city?

In the first place, separate schools are mandatory under the provisions of the act, and this act as we have already shown, is within the power of the legislature. See *U. S. v. Buntin,* 10 Fed. 730; *State v. McCain,* 21 Ohio, St. 198; *Ward v. Flood,* 48 Cal. 36; *Cory v. Carter,* 48 Ind. 327; *County Court of Union County v. Robinson,* 27 Ark. 116;

*City of Boston v. Roberts,* 5 Cush. 198; *State v. Duffey,* 7 Nev. 342; *Clark v. Board of Directors,* 24 Iowa, 256; *Dallas v. Fosdick,* 40 How. P. R. 249.

The last four authorities are cited approvingly by the supreme court of the United States, 95 U. S. 505, *Hall v. De-Cuir.*

The manner in which the minor class shall be provided for in the way of school houses and necessary teachers and accommodations is especially set forth in the statute, which provides among other things that the county shall not furnish a school house in a district which had at the date of the passage of the act such school house already built.

There is then a limitation upon the powers of the county commissioners, which prohibits them from supplying a school house in the cases where one was already supplied; and if, then, as contemplated in this case, the board of education should at their will sell and dispose of the property and convert the proceeds to the use of the white school, the colored or minor class in that district would be left without school facilities, the officials prohibited from the expenditure of funds to provide such facilities, and the colored children under the provisions of the same law, would be debarred from attendance upon the white school.

The judgment of the lower court estopped such a condition of affairs as this being brought about, by preventing the consummation of the plans of the school board, and carried out the plain and manifest intent and purpose of the statute.

Second, is such statute unconstitutional?

In support of this contention it is urged that in giving

such effect to the statute, the board of education has no more power or control over a building used as a separate school than they would have in case the county should supply such a building for them. In other words, a building which up to the time of the passage of the act belonged to the school district, is by the act given such a *status* as that the board can no longer be said to own or control it, and this it is urged is equivalent to taking property without due process of law, and is prohibited by the federal constitution.

The error in this contention grows out of the fact that by the statement of it there is an assumption that the board of education of Kingfisher has a *status* so disconnected from the Territory as that it has such property rights as are possessed by private corporations, or corporations for profit. This is not the *status* of a school district. School districts are *quasi* public corporations, and they raise funds for school purposes by the exercise of the taxing power of the Territory. They are simply the agencies of the higher power. On behalf of the Territory they cause taxes to be levied out of which school houses are constructed, and such acts when performed by a school district are a part of the general exercise of sovereignty, which the Territory exercises over its entire domain; and it cannot say, after the exercise of such power, that the property and rights so acquired belong to the district independent of the Territory. But in this case it cannot be said that the law and the judgment complained of restrict or divert the property to a use public or private inconsistent with the original use and purpose for which it was acquired. The law and the judgment direct a continuance of the original purpose of its acquisition, while the

school board is contending for the right to change and divert it to other purposes and uses, leaving the minor class of school children without provision for school facilities. This has been prohibited, and we think rightfully.

There is, however, another proposition submitted in this case in the brief of counsel for plaintiff in error, which must be noticed.

In 1890 the legislature passed an act providing for separate schools where the same was authorized by an election held in the county for that purpose, which election was to be held on the first Tuesday of April, 1891, and such election to be repeated on the first Tuesday of April every third year thereafter. This law was amended in 1893, wherein it was provided that in any election for school officers the question of separate schools could be voted upon, and when such fact was determined by an election, the law made it the duty of the county commissioners to levy a special tax for the maintenance and support of such separate schools. This created a county separate school fund. In 1891 the school board of Kingfisher rented the lots on which the building in question now stands, and erected thereon a building for use as a white school, and in 1893 the board erected a building for the use of the colored schools, and thereafter kept the two schools separate.

In 1898 the board erected a large brick building for the white school, and moved the colored school building up to and attached it as an addition to the building formerly used for white children, and thereafter to the present time the whole property has been used for the education of colored children, and in November, 1898, the board of educa-

tion by purchase secured title to the lots on which this frame building stands. The year previous, however, (in 1897) the legislature repealed the previous acts, and passed an entirely new act providing for separate schools, which made it unlawful for a white child to attend a colored school, or a colored child to attend a white school, and provided for the enforcement of this provision, which law provided for prorating money received by taxation in proportion to the number of children of each class.

This law was held by the supreme court in *Porter v. The County Commissioners,* 6 Okla. 550, to be unconstitutional and the repealing clause of said law was held not to repeal the law of 1893, and thus the whole matter stood until the passage of the present separate school law in 1901.

Under this *status* of the law and the facts touching the creation of the property in question, and the devotion of it to the use of separate schools, counsel for plaintiff in error maintain that the board of education had no power to expend district money to construct school houses for the education of colored children. That the board of education of the city had no concern whatever with the erection of such school house or the payment of teachers' salaries, and cite in support of this contention *School District No. 76, et al. v. Capitol National Bank,* 7 Okla. 45. This contention, we think, cannot be upheld; first, for the reason that it may not rightfully be said that a school district under any circumstances has no concern in the education of any class within its borders, and the court in the case last above cited does not lay down the law in support of any such proposition. It is there decided simply that a territorial school warrant drawn upon

a separate school fund is not sufficient upon which to base an action against the district, and the court holds that this is true when separate schools are established as provided by the laws of 1890; and turning to the record in this case we find that separate schools in Kingfisher county were established by a vote of the electors thereof, on the 12th day of May, 1896, but the practice of having separate schools in the city of Kingfisher was commenced by the board of education of that city in September, 1892, and was continued during subsequent years, and in 1893 the board of education erected the colored school building now consolidated with the building formerly used for white children.

From this it must appear that the board of education of Kingfisher had, and rightfully so, concern in the education of its colored children long before the voters of that county authorized the creation of any separate school fund out of which such children might be provided for. Such an act was not illegal; it was not prohibited by law. It was the duty of Kingfisher school district, without race distinction, to provide equal facilities for all children of school age, and if the board saw fit to furnish a portion of such children, to wit, the colored, a separate building, such act was legal, regardless of the question as to whether or not they had the legal right to compel attendance and prohibit colored children from attending the white school.

The building when erected and devoted to the education of colored children, was the property of the school district, and the board had control of it. It was still the property of the school district when consolidated with the building formerly used for the education of white children, and

the board still had control of it in the same sense and to the same extent only as it had control of any other school building; and in the absence of legislation to the contrary it might have been disposed of and converted into cash at the will of the school board, or governing body of the district. It was, however, public property, and by the act of the district devoted to the education of colored children, and as such subject to the laws of the Territory governing and controlling the same. The right of the school board to dispose of the same at will, leaving the colored children unprovided for, was prohibited by the act of 1901, which act, as determined by the lower court, estopped the school board from disposing of the property in the manner and for the purpose contemplated.

The judgment of the court below is therefore affirmed, with costs.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.