## TEMPLE ET AL. VS. LAWSON.

The giving of costs in equity is within the discretion of the Court, to be exercised upon a full consideration of all the circumstances of the case, and the situation of the parties: and that discretion, when exercised as to those costs in a suit which are denominated "general," or properly "costs in the cause," cannot be controled or reversed on error.

It seems to be a rule, permanently established by Courts of chancery, that they will, in no case free from fraud in the defendants, allow interpleaders their solicitor's fee, to be paid generally, or out of the special fund brought into court.

Applications for costs should be made at the hearing, or before the decree; as, after the decree has passed and become final as to the party, the Court has no power to make him any allowance for costs.

Where a bill is filed by a party having special funds in his hands, calling on those interested in the fund to interplead, a decree may pass, as to him, upon his depositing the fund in Court, and the cause progress as to the interpleading parties.

*Appeal from the Circuit Court of Union county in Chancery.*

Hon. ABNER A. STITH, Circuit Judge.

CARLETON, for the appellants.

After the decree had passed, discharging the complainant, the Court had no power to award his costs, without showing error, mistake, or the like, in regard to his costs.   3  *Danl. Ch. P.* 1553.

The parties interested in this fund could not, without notice, have their rights thus affected.

That the Chancellor could not allow the interpleader his solicitor's fee.   *Dunlap vs. Hubbard,* 19  *Ves.* 205; 3  *Danl. Ch. P.* 1767; *Dungey vs. Angove,* 2  *Ves. jr.* 313; *Dawson vs. Hardcastle,* 1  *Ves. jr.* 368, *notes;* 3  *Danl. Ch. P.* 1767.

Mr. Justice HANLY, delivered the opinion of the Court.

On the 9th June, 1853, the appellee, Lawson, filed his bill of interpleader, on the chancery side of the Union Circuit Court, making J. H. Temple & Co., Nelson, Bradley & Co., A. F. Dunbar & Co., J. H. Palmer & Co., Miles M. Temple, Henry C. Buckingham, James B. Kirtland, and William Holmes, defendants, and charging in his bill, in substance, that he, Lawson, on the 24th of February, 1852, made two writings obligatory, by which he bound himself to pay to J. H. Temple & Co., a portion of the defendants named in his bill, in notes, on solvent men, $5,669 89-100, on or before the 1st March, 1853,—that on the 12th August, 1852, Nelson, Bradley & Co., other defendants in his bill, commenced their action of assumpsit by attachment, against the same J. H. Temple & Co., and also Miles M. Temple and Henry C. Buckingham, other defendants named in his bill, for $6200, and garnisheed him, Lawson, on his indebtedness to J. H. Temple & Co.,—that, on the 11th December, 1852, A. F. Dunbar & Co., other defendants in his bill, commenced their action of assumpsit by attachment, against the same J. H. Temple & Co., for $500, and garnisheed him, Lawson, and his indebtedness to J. H. Temple & Co.; and that, on the 11th December, 1852, J. H. Palmer & Co., other defendants in his bill, commenced their action by attachment against the same J. H. Temple & Co., for $1500, and garnisheed him, Lawson, on his indebtedness to them—that these several attachment suits were brought on the law side of the Union Circuit Court—that, after the service of the writ of garnishment, sued out against him by Nelson, Bradley & Co., but before the service of the garnishments, sued out by A. F. Dunbar & Co., and J. H. Palmer & Co., he, Lawson, had, by letter from John H. Temple, one of the firm of J. H. Temple & Co., been notified that his writings obligatory had been assigned, but was not informed to whom—that, in March, 1853, he had been notified by Messrs. Marr & Rainey, attorneys at law, resident in Union county, that they, as the attorneys of the defendant in his bill, J. H. Kirtland, held one of the writings for $4,-

660 63-100, and that they also held the other one for the defendant in his bill, William Holmes, to whom they had been, severally, respectively assigned—that on the 14th April, 1853, Marr & Rainey, as attorneys for Kirtland and Holmes, instituted actions against him, Lawson, on their notes, so asserted to have been assigned to them, on the law side of the Union Circuit Court—that all of said parties were persisting in their claims—that he, Lawson, was greatly harrassed and annoyed, and would be put to great cost, expense, trouble and vexation in the litigation and defence of the several suits which had been brought and instituted, involving his indebtedness to the defendants, J. H. Temple & Co., and the several cross and conflicting suits, brought against him, in respect thereto—that he, Lawson, was, and had been always, ready and willing to discharge and pay off his obligations to the defendants, J. H. Temple & Co., according to their tenor and effect, but, that he, Lawson, was in doubt to whom the same ought or should be paid—was fearful, if he should pay the amount to one or the other of the defendants named in his bill, the others would persist to annoy and vex him with their suits, and might finally require him to pay the amount over again. Prayer that the persons named might each be made defendants—that the Court would settle and determine the rights of the respective parties—would direct Lawson to whom of them to pay over the amount of his obligations, or, in default thereof, that the Court would appoint a Receiver in Chancery, to take charge of the means tendered with his bill, to pay his obligations—that, on doing either of which, Lawson furthermore prayed that he might be quieted in those suits, and secured against further molestation and costs, in respect thereto, by perpetual injunctions, etc. Concluding for general relief.

On the 2d July, 1853, all the parties appeared, by themselves, or their solicitors, and consented, in open Court, that the bill might be taken as confessed, and that a decree might then be entered in accordance with the prayer thereof. It appears, from the transcript, that, on that day, a decree of the Court

was entered, in substance, as follows: That the bill be taken as true,—that the notes, tendered by the bill, in payment of those of Lawson, due to J. H. Temple & Co., be received, and taken as full payment and discharge of Lawson's obligations,—that the parties be perpetually enjoined from proceeding with their respective suits at law against Lawson,—that Lawson pay all the costs in the suits of Kirtland and Holmes against him. It appears, also, from the transcript, that it was agreed between the defendants, named in Lawson's bill, that Lawson should be discharged from that suit, as a party, after the rendition of the decree, as above, but that the suit should be retained as to themselves, with the view of having the Court, at some future time, to settle the contest between them, in respect to the fund paid into Court by Lawson, which was consented to by the Court, and an order was entered, discharging Lawson from further notice or concern, as a party to that suit, but directing that it might be retained, as to the defendants, for the purpose of settling their rights, with respect to the funds paid into Court.

It appears from the transcript that, on the 8th day of December, 1854, the parties, Lawson and the defendants named in his bill, came into Court and suggested that that cause was still standing on the docket, notwithstanding the disposition theretofore made of it, as above stated, and requested that the Court should strike it from the docket, which on that day was accordingly done.

It appears also that afterwards, at the April term, 1856, Lawson by his solicitor, filed a motion to retax the costs of Lawson and allow him the sum of $350 out of the fund brought into Court by him under the decree above stated, being the amount of his attorney's fee for services rendered in and about the bringing and litigating the suit brought by Lawson, which resulted in the decree above stated. And the Court upon the testimony of two witnesses, who testified to the reasonableness of $200, decreed that amount to him to be paid out of the fund

brought into Court. No notice appears to have been given of this motion previous to its being filed. But the transcript shows that on the day of the decree allowing Lawson the $200, as attorney's fee in the interpleader suit, the defendants in that suit, who claimed to be interested in the fund brought by Lawson into Court, came into Court and expressed themselves dissatisfied with the decree of the Court allowing Lawson his attorney's fee, and excepted thereto, and took an appeal therefrom to this Court; and it is now insisted here, on the part of the appellants, that the last decree rendered in the cause in favor of the appellee, Lawson, was unauthorized and unwarranted, and, therefore, is erroneous.

For the purpose of better understanding the subject before us, and with the hope of making ourselves better understood, we propose in the outset to state a few of the general rules which have been prescribed by Courts of Chancery for their government in determining questions of costs and awarding them.

1. The giving of costs in equity is entirely discretionary, (see *Scarborough vs. Burton,* 2 *Atk.* 111. *Burnett vs. College,* 3 *Bro. C. C.* 390. 5 *Danl. Ch. Pr.* 15, 15;) as well with respect to the period at which the Court decides upon them, as with respect to the parties to whom they are given. See *same authorities above cited.*

2. It is said that inasmuch as the giving of costs in a chancery suit is entirely discretionary, the exercise of that discretion cannot be reviewed or controled on error, or, in other words, that it is not the subject of error. See *Cowles vs. Whitmore,* 10 *Conn. Rep.* 121.

3. But when it is said that the giving of costs in Courts of Equity, is entirely discretionary, it must not be supposed that these Courts are not governed by definite principles in their decisions relative to the costs of proceedings before them; all that is meant, it is said, by the *dictum,* is, that these Courts are not like the ordinary Courts, held inflexibly to the rule of giving

costs of the suit to the successful party, but that they will, in awarding costs, take into their consideration the circumstances of the particular case before it, or the situation or conduct of the parties, and exercise their discretion with reference to these points. See *Brooks vs. Byam*, 2 *Story's C. C. Rep.* 553–'4; *Kaye vs. Bank of Louisville*, 9 *Dana Rep.* 261–'4; *Tomlinson vs. Ward*, 2 *Conn.* 396; *Hunt vs. Lewin*, 4 *Stew. & Port. Rep.* 138; *Randolph vs. Rooser*, 7 *Port. Rep.* 249.

4. The discretion which we have said resides in the Court to award or give costs, must be understood to relate only to those costs in a suit, which are denominated "*general*," or properly "costs in the cause," and not such as may be said to be *extraordinary*, such as directing the costs of the suit to be paid out of a particular fund, or where the Court under special circumstances and a particular state of facts, developed by a proper course of pleading and demanded at the proper time, will direct counsel fees to be paid by a party either generally or out of a particular fund. See 3d *Danl. Ch. Pr.* 1517, 1553, 1583, 1767.

5. It is said in *Dungey vs. Angove* (2 *Vesey Jun.* 313,) which was a case of fraudulent collusion, the plaintiff and his solicitor were ordered to pay the defendant to a bill of interpleader, which was dismissed, *all* his expenses as between attorney and client. See, also, 8 *Danl. Ch. Pr.* 1767. And it seems to be a rule, permanently established by Courts of Chancery, that they will in no case, free from *fraud* in the defendants, allow interpleaders their solicitor's fee, to be paid generally, or out of the *special fund* brought into Court. See *Dunlap vs. Hubbard*, 19 *Ves.* 205. The Chancellor in this last case, saying: "I do not recollect a single instance where an interpleader has been allowed his attorney's fee."

But supposing, for the argument, that it were proper to allow attorney's fee in any case of interpleader, without fraud on the part of the defendant, we apprehend there can be no doubt application should be made for such costs at the hearing or at

10

any rate before the decree has been passed, as, after a decree has been *passed*, the Court will not, on petition, give the ordinary costs of the suit to a party, although he was a mere trustee, and as such, would have been entitled to them, as a matter of course, if asked for at the hearing. See *Coleman vs. Sorrell*, 2 *Cox* 206, *cited in* 3 *Danl. Ch. Pr.* 1553.

It appears from our statement, that though the suit in the case before us was disposed of as to Lawson, it was retained as to the defendants or appellants, and it may not be without profit that we should enquire as to the effect of such a course of procedure as this in respect to the rights of the parties in relation to each other, and the jurisdiction of the Court, both over the subject matter and the parties We will advert to the principles of law bearing on such a case under such state of facts.

It is said that a decree in an interpleading suit may terminate the case as to the plaintiff, though the litigation may continue between the defendants by interpleader, and in that case, the cause may proceed without revivor, notwithstanding the death of the plaintiff. See *Mitf. Plea. by Jeremy* 60, 49, *note* (*n*); *Anon.* 1 *Vern.* 351; *Jennings vs. Nugent*, 1 *Moll.* 134; 3 *Danl. Ch. Pr.* 1765.

Courts of Equity dispose of cases arising upon bills of interpleader, in various modes, according to the nature of the question, and the manner in which it is brought before the Court. An interpleading bill is considered as putting the defendants to contest their respective claims just as a bill does, which is brought by an executor or trustee to obtain the direction of the Court upon the adverse claims of different defendants. If, therefore, at the hearing, the question between the defendants is ripe for decision, the Court will decide it, and make a final decree at the first hearing. And if it is not ripe for a decision, as between the defendants, the Court merely decides that the bill is properly filed and dismisses the plaintiff with his costs up to that time and directs an issue to ascertain contested facts, as may be best suited to the nature of the case. See *Angell vs.*

*Hadden,* 16 *Vesey* 202; *City Bank vs. Bungs,* 2 *Paige* 570; 2 *Story Eq., sec.* 822; 1 *Smith Ch. P.,* (2 *Amer. Ed.*) 472; *Eden on Inj.,* (*2d Amer. Ed.*) 404; 3 *Danl. Ch. Pr.* 1765.

And such seems to have been the course pursued with the case before us. As far as Lawson, the appellee, was concerned, the cause had been disposed of for more than two years before his application (on simple motion without notice,) was made for the allowance of counsel fees. There can be no doubt, we think, that the Court below had not the power, under the circumstances, to make an allowance to the appellee of $200, or any other sum, for counsel fees, at any time, and more particularly so after the decree had been *passed* in the cause, as was the case in the instance before us.

The decree of the Union Circuit Court in Chancery, making the allowance of $200, as counsel fees in this cause to the appellee, is, therefore, reversed at his costs.

Absent, Mr. Justice SCOTT.