COUNTY COURT OF UNION COUNTY v. ROBINSON, Trustee, etc.

COMMON SCHOOLS—*District tax, amount by whom fixed.*—The electors of the District, only, have authority to fix the amount of the school tax, and the only limit upon them is, that they shall not levy a less sum than is sufficient to carry on a school for three months in each scholastic year.

SAME—*Trustee—powers and duties of.*—It is the duty of the Trustee to call the meeting and to report certain facts and estimates to the electors and to keep a record of their proceedings, but so far as assessing the amount or the levying of the tax is concerned, he has no voice over any other elector.

SAME—*When electors fail to act.*—When the meeting is not attended by a sufficient number of the electors to hold an election, it is the duty of the Trustee to lay his estimate before the County Court for their action, and, upon which, the law requires the County Court to make the levy.

SCHOOL HOUSES AND SCHOOLS—*Number of, and separate as to whites and blacks.*—The law does not contemplate but one school house and school to each district only, (wherein it provides that separate schools shall be provided for whites and blacks) but in case there should be both white and colored children in the same district, would require separate schools.

COURTS—*Errors in judgment or abuse of discretion, how corrected.*—The discretion or judgment of a court of competent jurisdiction, where there is abuse of the one or error in the other, cannot be controlled by *mandamus*, but may be corrected on appeal.

APPEAL FROM UNION COUNTY CIRCUIT COURT.

HON. GEORGE W. McCOWN, *Circuit Judge.*

*J. H. Carlton and Garland & Nash,* for Appellant.

A *mandamus* is not a writ of right. It is always *ex parte,* and will be granted only when a party has shown he has a *legal right,* and no other adequate specific legal remedy. 1*st Chp. Genl. Prac.,* 790 ; *Rex. vs. Bp. of Chester,* 1 *Term,* 696; *King vs. Bishop of Canterbury,* 8 *East.,* 219 ; *Strong, Petitioner,* 20 *Pick.,* 497 ; *Cheatham ex parte,* 6 *Ark.,* 437 ; *Young vs. Mills,* 1 *Ark.,* 11 ; *Ib.* 121 ; *Trapnall ex parte,* 6 *Ark.,* 9 ; *Williamson, ex parte,* 8 *Ark.,* 424.

It will not lie when the party has the right of appeal. *Williamson, ex parte,* 8 *Ark.,* 424; nor when error lies. *Ib.*

It seems in no case, when a subordinate court, *acting judi-*

*cially*, has, in the exercise of its discretion, or judgment, made an adjudication, can *mandamus* properly issue. *Green vs. County of Pulaski*, 3 Ark., 427; *Brem vs. Arkansas Co. Court*, 9 Ark., 240; *Oneida C. P. vs. People*, 18 Wend., 79; *People vs. Judges of Duchess C. P.*, 2 Wend., 658; *Benson ex parte*, 7 Cow., 363; *Chase vs. Blackstone Canal.*, 10 Pick., 189; *Morse Petitioner*, 18 Ib., 443. ·

When an inferior court refuses to act, it may be put in motion by a *mandamus*, but cannot be compelled to act in a particular manner, nor render a particular judgment. *Williamson, ex parte*, 8 Ark., 424; *Hutt, ex parte*, 14 Ark., 368.

GREGG, J.—In September, 1870, the appellee presented his petition to the Circuit Court of Union county, for a mandamus against appellant, to compel said county court to levy a larger amount of special school taxes, for district thirteen, in said county, than had been adjudged by the court, because, as he alleged, there were 397 youths in said district capable of attending school, and that but four schools had been provided; whereas, there should be ten, and a sufficient amount of taxes to support that number. He alleged that, according to law, he called a meeting of the legal voters of the district, on the 13th of August, 1870, for the purpose of voting a tax to carry on a three month's school, or one, during such longer time, as the electors might determine.

That the petitioner, as trustee, reported to said meeting of electors, that ten schools were necessary in that district, and it would require a special tax of one thousand dollars to carry on such schools, but the meeting refused to adopt his estimate of the number of schools necessary, or the amount of tax proper to be levied, and they voted for three schools and a special tax of three hundred dollars.

And to increase the number of schools and amount of taxes, he called another meeting on the 2d of September, and laid before the meeting of the same, estimates as before, but the meeting refused to levy but $150 00 additional tax, and to

provide for but one more school.   That he reported the action
of the electors of said district to the county court, and repre-
sented to them that a special tax of $450 00 was wholly insuf-
ficient to carry out the spirit and intent of the school law,
and moved the county court to levy an additional sum of
$550 00, making in all $1000 00, but the county court levied
the sum of $450 00 only, and refused to levy $1000 00; and
he prays that a peremptory order be made, requiring the
county court to levy $1000 00 of special tax, and, in case of
refusal, that they be severally attached for "*a contempt of the
court and the law.*"

The county court appeared and filed a demurrer to the
petition.   The circuit court overruled the demurrer, and per-
emptorily ordered that the county court levy an additional
sum of $550 00.

On application, the court set aside this order, and allowed
the county court to file an answer.   They responded, that at
the electors' meeting aforesaid, the appellee reported the
children and youths within said district to be 358, and that said
school district had $330 00 on hand, and that it was entitled
to $518 44 from the State fund, which is shown by reference
to the report.   That the electors had voted an additional sum
of $450 00, as special tax on said district, and established two
schools for white pupils, and two schools for colored pupils,
and that said sum of $1298 44, was sufficient to support said
four schools, etc.; and they refer to the proceedings, and the
report of the chairman, to show that said number of schools
and said amount is sufficient.   They also refer to a petition,
signed by seventy, and alleged to be a majority of the voters
of the district, protesting against more than four schools, and
more than $450 00 special tax.

And they again protest that the electors have the right to
fix the number and locate the schools, and determine how
much tax shall be levied, and if the trustee controverts the
amounts so fixed upon, it must be determined by the judg-
ment of the county court, and such judgment, if erroneous,

must be reached by appeal. The answer was duly sworn to and filed.

Whereupon, the court adjudged the answer insufficient, and that a peremptory mandamus issue; from which judgment the county court appealed to this court. There are two principal questions presented in this case:

*First,* Does the record show any error in the levy of this tax by the county court?

*Second,* If the county court did commit error, could that error be corrected by mandamus?

*Section* 13, *p.* 168, *Acts of* 1868, provides that each county shall be divided into school districts. *Section* 16 provides that new districts may be formed, or the boundaries of districts changed by the *county court,* with the consent of the circuit superintendent. *Section* 19, declares that all persons, qualified to vote for county and State officers, shall be electors for the school district wherein they reside. *Section* 20, that the *electors of any school district shall,* when assembled in school district meeting, *have power,* by a *majority* of *the votes cast* * * * to designate a site for a school house, and determine the time for which a school may be taught, more than three months in the year; to determine what amount of money shall be raised by tax, on the property of the district, sufficient, with the public school revenues apportioned to the district, to defray the expenses of a school for three months, or for any greater length of time they made decide to have a school.

*Section* 21, provides that the county court shall levy *all taxes voted for school purposes* at the *district school meetings. Sections* 27 and 28, prescribe the general duties and powers of the trustee; that he shall have charge of the school house, school property, etc., and shall purchase or build, etc., *as may be directed by a majority of the voters.*

By *Section* 31, he is required to submit a report *to the electors, at the school meetings,* with estimate of the cost of a school etc. By *Section* 32, if the district, at their annual school meeting, *fail to provide for* "*a school* to be taught at least three months

during that year," etc., the trustee "shall immediately forward to the county clerk, an estimate of the necessary expenses for a school of three months, after deducting the probable amount of the school fund revenues to be apportioned to the district, and a tax shall be levied," etc.

By *Section* 40, it is made the duty of the *trustee to report to the county clerk the amount voted* as a special school tax, and that must be attested *by the chairman of the meeting.*

From these various provisions, it seems strange that any doubt should exist as to the proper authority to assess the special district school tax. In all the various provisions, the electors are alone announced as the authority to fix the amount of said tax, and the only limit upon them is, that contained in the law, that they shall not levy a less sum than is sufficient to carry on a school for three months, in each scholastic year, and there is not a single provision of law giving the trustee any more authority or power in assessing the amount of tax to be collected, than is possessed by any other voter. It is made his duty to call the meeting and report certain facts and estimates to the electors, and to keep a record of their proceedings, but so far as dictating the amount of the levy is concerned, he has no voice over any other elector. It is true, if when a meeting is not attended by five (a sufficient number to hold an election) he then lays his estimates before the county court for their action and, upon which, the law requires the court to make the levy. And to every one who will read the various provisions of this law, it is not necessary to say that the law contemplated but one school house and school to each district, only, wherein it provides that separate schools shall be taught for whites and blacks, and that in case there should be both white and colored children in the same district, would require separate schools. It is made the duty of the county court and circuit superintendent, to so lay off the district, that all may have an opportunity of attending school.

Then, upon the facts, as presented, the County Court cer-

tainly did not err in any ruling they made against the appellee.

And, upon the other proposition, if error had been committed by the County Court, in making the levy, no question is better settled in this court than this, that you cannot control the discretion or judgment of a court of competent jurisdiction by mandamus.  A superior court, in proper cases, will issue a mandamus against an inferior tribunal, if such court refuses to take any action in a matter duly presented and properly cognizable before it; but when a court takes cognizance of such matter and passes its judgment upon it, it matters not how erroneous, such error cannot be corrected by mandamus.

In the case before us, the County Court was the proper tribunal to levy the tax—they considered the matter and made the levy; if that levy was not sufficient, that was the tribunal where facts should have been presented to convince their judgment as to the amount necessary to comply with the law. If they would not hear the facts, or, hearing, found against them, their judgment might have been corrected by appeal. This has been so repeatedly held that it can but be a matter of surprise to find a Circuit Court ruling differently.   See *Young vs. Miller*, 1 *Ark.*, 11; *Ib.*, 21; *Ib.*, 121;  *Green & Co. vs. Pulaski Co.*, 3 *Ark.*, 427 ; *Trapnall, ex parte*, 6 *Ark.*, 9 ; *Ib.*, 437 ; *Williamson*, 8 *Ark.*, 424; *Brem vs. Arkansas County*, 9 *Ark.*, 240; *Cornwall vs. Crawford County*, 11 *Ark.*, 684; *Marr, ex parte*, 12 *Ark.*, 84; *Ib.*, 101; *Hutt, ex parte*, 4 *Ark.*, 368; *Johnson, ex parte*, 25 *Ark.*, 614; *and some later cases.*

The judgment of the Circuit Court is reversed and the cause remanded with instructions to dismiss the application for a mandamus at the costs of the appellee.