## JONES *v.* ADKINS.

### Opinion delivered February 1, 1926.

1. EQUITY—REFERENCE OF ACCOUNT TO MASTER.—Where plaintiff, a taxpayer, contended that defendant, as sheriff and collector, had received as fees large sums in excess of his salary, and asked for an accounting and that the excess be paid into the county treasury, and caused a mass of records and documents to be brought into court for examination, and defendant denied having received any sums in excess of his salary, it was proper for the chancellor to appoint a master to state the account.

2. EQUITY—MASTER'S FEE—REQUIREMENT OF SECURITY.—The chancery court, under its general discretionary powers to adjust and allot costs, may adopt reasonable rules to protect and secure a master in the payment of the compensation for his services as a necessary part of the costs of the litigation.

3. EQUITY—DISCRETION AS TO COSTS—REVIEW.—When the chancery court exercises its discretionary power over costs in an arbitrary and unreasonable manner and not according to equitable principles, the abuse of its discretion in a proper proceeding will be reviewed and corrected on appeal.

4. MANDAMUS—EXERCISE OF DISCRETION.—Where an inferior court has a discretion, and proceeds to exercise it, that discretion cannot be controlled by mandamus; but if it refuses to act or to exercise such discretion, mandamus lies to put it into motion.

5. MANDAMUS—ABSENCE OF OTHER REMEDY.—A party, to be entitled to the writ of mandamus, must show a clear legal right to the subject-matter, and that he has no other adequate remedy.

Mandamus to Pulaski Chancery Court; *Joseph W. House, Jr.,* Special Chancellor; mandamus denied.

*Arthur Jones, pro se.*

*George W. Emerson* and *J. C. Marshall,* for appellee.

WOOD, J. On the 27th of January, 1925, Arthur J. Jones filed his complaint in the Pulaski Chancery Court against Homer M. Adkins, the Fidelity & Deposit Company of Maryland, the New Amsterdam Casualty Company, and the Maryland Casualty Company. Jones alleged in substance that he is a citizen and taxpayer of Little Rock, Pulaski County, Arkansas; that Adkins is the sheriff and ex-officio tax collector of Pulaski County, and has been since January 1, 1923; that the other defendants were sureties · on Adkins' official bond; that Adkins is allowed the sum of $5,000 per year as salary for the performance of his official duties and is prohibited under the Constitution from receiving and keeping for his own use any more than that sum. He alleged in substance that Adkins had collected above his salary a sum amounting to over $50,000, which sum he refused to turn into the county treasury for the benefit of the plaintiff and other taxpayers. He alleged that a complete itemized account of the moneys and emoluments received and kept by Adkins is shown by the report of one Frank Wittenberg, a public accountant, covering a part of defendant's incumbency, part of which report he attaches and makes a part of his complaint. He averred that Adkins was required to keep a complete, accurate and itemized account of the fees received by him, and to account therefor, and to turn the same over to the county treasurer of Pulaski County. He alleged that Adkins had refused to place to the credit of Pulaski County the fees and perquisites collected by him, although demand had been made upon him by both the county and circuit judges of Pulaski County. Jones prayed, on his behalf and on behalf of all other taxpayers of Pulaski County, that Adkins be required to answer under oath and give an accurate statement of all fees, salaries and perquisites and other moneys

collected by him during his term of office, and that he show
what portion thereof he had kept for himself and what
portion he had turned over to the treasurer of Pulaski
County, and that an order be issued by the chancery court
commanding him to pay to Pulaski County all moneys
received by him in excess of his salary of $5,000 per an-
num allowed under the Constitution and laws of the State
of Arkansas; that, upon his failure to pay said amount in-
to the treasury for the benefit of plaintiff and other tax-
payers, a judgment be rendered against him and the sure-
ties on his official bond in the complaint named for the
amounts found to be due by him to Pulaski County, and
for all proper and equitable relief.

Adkins filed a separate answer to the complaint, in
which he admitted that he was the sheriff and ex-officio
tax collector as therein alleged. He specifically denied
all the other allegations of the complaint, and alleged
that he has made due and proper report as required by
law, of all moneys received and paid out by him, and has
turned into the county treasury all sums to which Pu-
laski County is entitled, and he prayed that he be dis-
charged with costs.

The New Amsterdam Company filed a separate an-
swer, denying that it was a surety upon the bond of Ad-
kins, and denied the other allegations of the complaint.
The Fidelity & Deposit Company, and likewise the Mary-
land Casualty Company, filed their respective answers
in which they adopted the answer of Adkins so far as
same was applicable to them, and prayed that they be
dismissed with their costs.

On the 2d of May, 1925, Jones filed a motion in
which he asked that a *subpoena duces tecum* be issued to
Adkins requiring him to produce before the court on
May 7, 1925, all books, records and papers in his office
pertaining to the issues involved, which he designated
in his motion as the sheriff and collector's general ledger
for the years 1923 and 1924, sheriff and collector's cash
journal for the years 1923 and 1924, and all books, papers,

records or writings relating to the cost of feeding prisoners in the county jail for those years, and also all books, papers and records which may reflect the receipts and disbursements of all moneys received and disbursed by Adkins during those years.

On the first of May, 1925, a subpoena was issued out of the chancery court to the sheriff of Pulaski County, Arkansas, directing him to command William Rogers, of the county clerk's office, to appear before the chancery court and to bring with him the audit of Pulaski County as made by Leathem & Co. up to January 1, 1925, and to bring with him the general ledger of the treasury department, the general ledger of the collector's department, the warrant register, the receipt book covering the collection of delinquent personal taxes for the years 1923 and 1924; and also commanding him to summon Eugene Greenfield, in the county treasurer's office, to bring with him the treasurer's general ledger for 1923 and 1924; and to summon G. L. Mallory, United States marshal, or his deputy, to bring the books in the marshal's office bearing the record of the support of the Federal prisoners for the years 1923 and 1924; and Albert Simms of the State Highway Department to bring with him the general ledger of that department for the years 1923 and 1924; and Leo Vaulkmer, Mayor Chas. E. Moyer, Judge John W. Wade, Dr. E. P. Bledsoe and Warden Clifton Evans to appear on the 7th day of May to testify in behalf of the plaintiff in the action. This subpoena was duly served on the 6th day of May, 1925.

On May 11, 1925, Adkins filed a motion in which he alleged that the issues involved in the cause required an audit of all receipts and disbursements by himself as sheriff and collector for the years 1923 and 1924, which amounted in the aggregate to approximately $8,000,000; that, to determine whether any sums were illegally received and retained by him, or whether any sum was due by him to the county, would require an audit of his entire account involving the above sum; that, at the instance

of Jones, the plaintiff, a *subpoena duces tecum* had been issued for the defendant Adkins in which he was required to bring into court the following:

Sheriff and collector's general ledger for Pulaski county for the years 1923 and 1924; sheriff and collector's cash journal for Pulaski County for the years 1923 and 1924; any books, papers, records or other writings relative to the cost of feeding prisoners in the Pulaski County jail for the years 1923 and 1924; and all books, papers and records which may reflect the receipts and disbursements of any and all moneys received and disbursed by the said Homer M. Adkins, sheriff and collector of Pulaski County, Arkansas, during the years 1923 and 1924.

Adkins alleged that an examination of the documents requested to be produced would require the services of an auditor especially skilled in the matters of accounting, and that the hearing of testimony of said auditor and other witnesses as may be introduced by the plaintiff and defendant would require a period of not less than sixty days. He therefore prayed that the court appoint a master and auditor, with power to employ stenographers and incur such other expenses as might be necessary and incident to the taking of the necessary testimony. The court granted the motion and appointed Charles H. Orto master, and directed him to ascertain all fees received by Adkins both as sheriff and collector during the years 1923 and 1924 from all sources, including the amounts received from what is known as "jail fees" or fees for maintaining the jail and feeding prisoners therein, and also all credits to which said sheriff and collector may be entitled as against all of such fees and as against collections from said jail during said period of time. The court further ordered that each of the parties to the action deposit with the clerk of the court the sum of $1,000 in cash, or a bond for said amount, with security to be approved by the clerk of the court within ten days from the date of the order, the same being as a guaranty

for the payment of the expenses of said master. The court further ordered that if, during the progress of the trial, it appeared that said sums were insufficient, said parties should deposit such additional sums as the court might deem necessary to guarantee the full payment of the services of the master. The plaintiff Jones objected and excepted to the action of the court in making the order.

In compliance with the above order, on the 20th of June, 1925, Jones filed his bond in the sum of $350 with J. M. Wells as surety thereon, which bond was duly approved by the clerk. The bond specified that it was for the payment of all costs not to exceed the sum of $350 for auditing as master the books of the defendant as sheriff and collector as per order of the Pulaski Chancery Court. The bond was signed by Wells and Jones.

On August 6, 1925, J. R. Alexander filed a motion in which he stated that he had contributed to a fund required as a deposit for expenses in the above entitled cause the sum of $350 in cash, which fund was in the hands of the clerk of the Pulaski Chancery Court, and he stated that, upon further consideration, he did not desire to contribute said amount to the fund, and asked the court to direct the clerk to return the same to him. Jones filed a response to the motion of Alexander, in which he alleged that Alexander, at the request of the plaintiff, had voluntarily deposited the sum of $350 in the nature of a gift to the plaintiff, which the plaintiff was to return to Alexander in the event plaintiff won the suit, and otherwise the money was to be a gift; that the plaintiff, relying upon the bond and the deposit of this money had gone ahead with his work in the case, and had ceased to hunt for other bondsmen; that the matter was, at the time Alexander made the deposit, a live topic of public interest, since which time the interest of the public had abated, and it was then impossible for the plaintiff to secure another bondsman, and that the release of Alexander from the obligations of the bond would work a

great hardship and loss to the plaintiff, and he therefore prayed that the motion be overruled.

Alexander filed an affidavit in support of his motion, in which he set forth that the sum of $350 deposited by him was not given to the plaintiff conditionally, or otherwise, but was deposited as surety for the costs of the auditor; that, at the time of the filing of his motion, no service had been rendered by the auditor, and therefore the affiant was entitled to withdraw his deposit.

The court heard the issue on the motion of Alexander and the response thereto by Jones, and the affidavit of Alexander, and the statement and argument of counsel of the respective parties, and entered the following order: "It is therefore considered, ordered, adjudged and decreed that the clerk of this court be and is hereby authorized and directed to refund to the said J. R. Alexander the sum of $350, this order to have effect thirty days from this date, unless an appeal is duly prosecuted in that time." The plaintiff excepted to the order of the court and prayed an appeal to the Supreme Court, which was granted.

On the 18th of September, 1925, J. M. Wells filed a motion in which he set up that he became a bondsman in the amount of $350 for the payment of the auditor's expenses in the cause, and that at the time he signed the bond it was agreed that the suit should be pressed to an early hearing, which had not been done; that no auditor's report had been filed, and no work had been done by the auditor, and therefore no liability had been incurred on the obligation of his bond; that at the time he executed the bond it was agreed that J. R. Alexander should also be responsible in the sum of $350 on the bond for the auditor's expenses, and that it was upon these terms that the mover, Wells, had agreed to become surety in the sum of $350. He alleged that Alexander had since that time been relieved of his obligation on the bond in the sum of $350 which he had deposited, and the court had ordered the same restored to him. He prayed that he be allowed

to withdraw from the bond and be relieved from any further liability thereon. While this motion was pending, Jones, on the 17th of October, 1925, filed his motion to modify the order of the court made May 10, 1925, requiring the parties to deposit the sum of $1,000, or, in lieu thereof, bond with the clerk of the court in such sum, and asked the court to strike out such order. He alleged in his motion that the action was brought for the benefit of himself and all other residents of Pulaski County, and that they were not required to execute a bond for costs to maintain an action in the courts of the State. He set up that he was ready and able to produce before the master testimony to establish the allegations of his complaint; that his testimony would include the public and county records known as the official audit of county finances and records, which audit alone was sufficient to prove the allegations of his complaint, and to enable the master to make a definite finding and report to the court. He then alleged that the county records had been audited by a firm of certified public accountants, and that its report was on file with the officials of the county, and contained the same information that a new audit would reveal, and that to require the plaintiff, under those circumstances, to put up a cash bond in the sum of $1,000 to pay his pro rata of the new audit was an unwarranted and arbitrary exercise of power by the court, and, if permitted to stand, would stifle the prosecution of the suit by the plaintiff, which had been brought by him in good faith. Plaintiff alleged that he was in a position to produce before the master the records of the county clerk's office, the county treasurer's office and the sheriff and collector's office, which would establish beyond question that Adkins had received in emoluments large sums of money in excess of his salary under the Constitution. He alleged that the defendant was seeking to avoid meeting the issue fairly, and was undertaking to stifle the investigation and prohibit a competent court of inquiry to go into the matter on its merits. Plaintiff

alleged that he is in position to offer competent testimony to establish the allegations of his complaint either before the master or before this court, and he therefore asked that the order requiring the bond be modified, and he be permitted to submit his proof in accordance with the rules of law and procedure established by the courts, and he agreed to pay all costs incurred by him in the event the issues were decided against him. The plaintiff then alleged that, according to an official audit prepared by a certified public accountant, the defendant had collected various amounts which he enumerated, and alleged that these amounts were far in excess of the defendant's salary of $5,000; that he had made no accounting to the county for these sums; that, if the books of the county were properly kept, defendant would be able to render the county a financial statement showing the gross cost to the county of feeding the prisoners and the profits earned by Adkins in the maintenance of the prisoners, and that the county would be entitled to receive all in excess over and above the actual costs thereof. He therefore prayed that the order requiring him to make bond or to put up a cash deposit of $1,000 in lieu thereof, be rescinded, and that he be permitted to proceed with the cause and to establish the allegations of his original complaint and his motion to modify.

The defendant filed a demurrer and response to the motion to modify, in which he set up that the order requiring a deposit had been made at a previous term, and also alleged that the alleged official audit referred to in the motion to modify as affording sufficient information of the accounts of the sheriff and collector, was made without the knowledge of the defendants, and was an *ex parte* statement and not binding on them in any way; that said audit was wholly insufficient to determine any alleged liability of defendants; that it is not true that said audit contains the same information that an audit under order of the court would contain, or that the figures given would be the same in such new audit; that it is not true

that requiring a deposit for an audit in this case is unwarranted or arbitrary, or that it would stifle prosecution of the action, nor was it true that the defendants were seeking to avoid meeting the issue fairly or trying to prohibit the court from going into the merits of the issue; nor that the plaintiff was in a position to establish the allegations of his complaint without an audit.

The court granted Wells' motion, and entered an order October 22, 1925, adjudging that he be allowed to withdraw his name from the bond for costs, to which ruling the plaintiff excepted and asked that his exception be noted.

The court, on October 24, 1925, heard the motion of Jones to modify and rescind the order of May 10, 1925, and entered an order overruling the motion. Jones thereupon asked permission to withdraw the $300 which he had on deposit with the clerk of the court, and the court thereupon directed the clerk to pay him that sum. Jones then stated that he would not comply with the order of the court entered May 10, 1925. The court thereupon ordered and decreed that no further steps be taken in the cause until the plaintiff should comply with the order of May 10, 1925, by depositing with the clerk of the court the sum of $1000. The plaintiff excepted to this ruling of the court, and prayed an appeal to the Supreme Court, which was granted.

The appellant Jones, in due time, filed his transcript in this court showing the above proceedings, and moved to advance the cause as involving the public interest. In response to this motion to advance, Adkins denied that the cause was one of public moment; denied that all citizens of Pulaski County are interested, and alleged that, as far as the record before this court is concerned, the appellant is the only person of the 150,000 inhabitants of Pulaski County who has asserted any interest in the matter whatever, and that the quorum court, the grand jury, and the county judge, representatives of the county, have repeatedly declined and refused to take any interest what-

ever in this alleged cause of action. He denied that he is
withholding any funds whatever belonging to the county,
and alleged that neither the transcript nor the appellant's
motion showed any state of facts authorizing the court to
advance the cause. Appellee then moved to dismiss the
appeal.

The motion of the appellee to dismiss the appeal was
granted, but, in passing upon the motion, the court notified
Jones that on the record presented he would be allowed
to file a petition for mandamus. Jones, hereafter called
petitioner, on the 28th of November, 1925, filed his peti-
tion for mandamus in which, after setting up and review-
ing the proceedings had in the chancery court as above
set forth, he alleged that the action herein was begun for
the benefit of the citizens and taxpayers of Pulaski
County, and that there was no statutory authority for the
requiring of a bond for costs from the appellant, and that
the chancery court of Pulaski County had no inherent
right to require said bond, and in doing so had exceeded
its legal powers and jurisdiction. He alleged that he was
willing to pay due and legal costs as the cause progressed,
paying same in advance in cash, but was unwilling to give
security for costs in advance in so large a sum where
there was no lawful reason for so doing. Petitioner al-
leged that, under § 2 of act 145 of the Acts of 1917, and
§§ 4633 and 4634 and 4637 of C. & M. Digest, the sheriff
and collector was required to make and keep at his own
expense, at all times, a full and complete statement of all
fees and emoluments received by him, and required a
record of these accounts to be open to inspection by the
judges of the circuit and county courts of the county, and
by all citizens, and that there was therefore no necessity
for the chancery court to require any citizen to bear any
expense of providing this official record which the sheriff
was required to keep. Petitioner alleged that the cause
could be tried without incurring heavy costs, and without
the necessity of an audit, and he offered to produce on the
trial of the issues certified copies of the official audit to

the county books, and the originals, if desired. He attached to his petition photostatic copies of such audit, and marked the same Exhibit "A". He alleged that same would show what appellant desired to prove in the chancery court. He alleged that the decree of the court of May 10, 1925, absolutely barred the petitioner from proving his case in the usual manner provided by law, and alleged that he had no other remedy than by mandamus to compel the chancery court to proceed with the trial of the cause. He therefore prayed that a writ of mandamus be issued by this court directing the special chancellor to proceed to try the cause without requiring the petitioner to execute the bond as previously directed by the special chancery court.

Adkins, hereafter called respondent, filed his demurrer and response to the petition for mandamus, in which he alleged that this court had no jurisdiction to issue mandamus, and for cause of demurrer alleged that the petition did not state facts sufficient to constitute the right of petitioner to mandamus or any other relief. The respondent then denied specifically the allegations of the petition for mandamus, and alleged that, "before the special chancellor could intelligently pass upon the issues in the case pending before him, he would have to have the testimony of a special master, an expert accountant, which testimony could not be given until a detailed examination was made of the books and accounts of respondent Adkins, as sheriff of Pulaski County, which would require an expense of approximately four thousand dollars; that the chancellor, in the exercise of his discretion, ordered that the petitioner and the respondent should each deposit one thousand dollars in cash or make a valid bond for that amount covering the costs of such audits; that appellee, respondent herein, complied with said order, but that the appellant, petitioner herein, has failed to comply with the order, and the special chancellor, in further exercise of his discretion, did not proceed with the cause until said order was complied with by

petitioner. Respondent Adkins further stated that said chancellor has not declined to hear the petition and try the cause, and has only made such orders as were in the sound discretion of said chancellor; that therefore the petition filed herein does not state any grounds which would justify the court in issuing a mandamus against said special chancellor, and this respondent respectfully prays that said writ be denied.''

1. A brief summary of the proceedings above set forth shows that, at the time application was made for the appointment of a master in the cause, the plaintiff in the action, petitioner herein, was contending that the defendant in the action, respondent herein, was indebted to Pulaski County in the sum of more than $50,000 in excess of his salary of $5,000 per annum in fees and perquisites allowed him under the Constitution and laws of the State. In order to establish his contention, the petitioner asked that a *subpoena duces tecum* be issued summoning William Rogers of the county clerk's office to bring into court the following records, documents, books and papers, to wit: sheriff and collector's general ledger for Pulaski County for the years 1923 and 1924; sheriff and collector's cash journal for Pulaski County for the years 1923 and 1924; any books, papers, records or other writings relating to the cost of feeding prisoners in the Pulaski County jail for 1923 and 1924; any and all books, papers and records which may reflect the receipts and disbursements of any and all moneys received and disbursed by the said respondent, during the years 1923 and 1924. In addition to the above records and documents, Rogers was summoned to bring into court an audit of Pulaski County made by Leathem & Company to Jan. 1, 1925, the general ledger of the treasurer's department; the warrant register, the receipt book covering collection of delinquent taxes for 1923 and 1924. G. L. Mallory was summoned to bring the record in his office of the support of Federal prisoners; Albert Simms of the Highway Department to bring with him the general ledger of that department for 1923 and 1924.

The petitioner alleged that the report of one Frank Wittenberg, a public accountant, covering only a part of the respondent's incumbency in office, which he attached and made an exhibit to his complaint, would show that he had failed to account for moneys in excess of $5,000 per annum in a large amount. The petitioner was contending that the above records and documents, together with the report of Wittenberg and Leathem & Company, would furnish evidence to the court to prove his contention; and he asked that the respondent be required to state an account under oath showing an accurate itemized statement of the fees, perquisites and moneys collected by him during his term of office, what portion he kept for himself and what portion he paid into the treasury of Pulaski County. On the other hand, the respondent denied that he should be required to make an account, and alleged that he was not due the county any sum, and that to determine the issue it would require the services of an expert accountant for a period of not less than sixty days to examine the records, take testimony, and state the account, and he prayed that such an expert be appointed.

Our statute, chapter 118, C. & M. Digest, contemplates the appointment of a master in chancery. Section 7153 of that chapter provides: "All matters of account pending in chancery may be referred by the court to the master, and he shall audit and adjust the same, and make report thereof to the court." The petitioner was contending that the records and documents and the audits made by public accountants, which he would adduce, would sustain his contention without the necessity of an audit. On the other hand, the respondent was contending that these records and documents would show, under a correct audit, that he was not indebted to Pulaski County in any sum, and that the audits referred to by the petitioner were made without his knowledge, and were *ex parte* and not binding on him, and were not sufficient to determine the issue involved; that he had made proper reports of the moneys received by him as the law requires, and had

paid into the county treasury all sums to which the county was entitled; that the records and papers in his office were open to inspection; and that the grand jury, the county judge, and quorum court of the county had repeatedly declined to report any delinquency or defalcation on his part.

Certainly, under the above issues and contentions, the court of chancery was fully justified in appointing a master to state the account of the respondent with the county. With these sharply conflicting issues, and the multitudinous array of records, books, and documents confronting it, doubtless the court concluded that it could not correctly determine the issues involved without a master. Any audit made and paid for by the petitioner or by the respondent would have been necessarily *ex parte,* and might have been considered by the court as partial. Therefore, it was most fitting, in order that an impartial statement of an account be made involving the matter in controversy, that the court appoint a master, an expert accountant, who should represent the court and both parties to the lawsuit—an impartial arbiter in the performance of his duties.

In *Claypool* v. *Johnston,* 91 Ark. 349, 352, we said: "The court has the power within its sound discretion to appoint a master for the purpose of assisting it in the proceedings before it, as for example to take testimony or to state accounts, etc.   * * *.   The master is the representative of the court in regard to the matter thus referred to him, and is wholly subject to the court's control, and should follow its orders."

It is obvious from the alleged facts of this record as above disclosed that the chancery court would have been greatly handicapped, unless the chancellor himself were an expert accountant, in undertaking to determine the issues involved without the aid of a master to take testimony and state the account. Doubtless the chancellor concluded that he was not sufficiently skilled, and was in other respects unequal to the task of taking the testimony

and stating an account, and that it was peculiarly a case where he could exercise his discretion in calling to his aid an expert in such matters, and one who would be the *alter ego* of the court for that purpose. We conclude therefore that the court did not abuse its discretion in appointing a master to state the account.

2. Since the court had the power, and correctly exercised it, to appoint a master, it occurs to us that, in the absence of a statute to the contrary, it was also within the sound discretion of the court to require that the services of such officer be compensated, and that such compensation be secured in advance by the parties conducting the litigation. This court long ago announced the principle which, unless overruled, must control here in the case of *Temple* v. *Lawson,* 19 Ark. 148, 152, where we said: "1. The giving of costs in equity is entirely discretionary, *as well with respect to the period at which the court decides upon them,* as with respect to the parties to whom they are given. 2. It is said that, inasmuch as the giving of costs in a chancery suit is entirely discretionary, the exercise of that discretion cannot be reviewed or controlled on error, or, in other words, that it is not the subject of error. 3. But, when it is said that the giving of costs in courts of equity is entirely discretionary, it must not be supposed that these courts are not governed by definite principles in their decisions relative to the costs of proceedings before them; all that is meant, it is said, by the dictum is that these courts are not, like ordinary courts, held inflexibly to the rule of giving costs of the suit to the successful party, but that they will, in awarding costs, take into their consideration the circumstances of the particular case before it, or the situation or conduct of the parties, and exercise their discretion with reference to these points."

Our court also in a very early case announced the rule in regard to costs at law in conformity with the law generally as it obtains in this country and in England, and which rule, so far as we know, has never been de-

parted from, that "the entire law of costs and fees is in substance statutory. The common law did not professedly allow any, the amercement of the vanquished party being his only punishment." *Thorn* v. *Clendenning,* 12 Ark. 60; *Jordan* v. *State,* 102 Ark. 43; *Burton* v. *Chicago Mill & Lbr. Co.,* 106 Ark. 296, 305. At the time this announcement was made by the court the Revised Statutes, c. 34, § 12, C. & M. Digest, § 1833, which is still the law in our State, provided: "If the plaintiff recover judgment he shall have judgment for costs against the defendant." But, notwithstanding this provision of the statute and the decision in *Thorn* v. *Clendenning, supra,* our court in the case of *Temple* v. *Lawson, supra,* announced the rule concerning the question of costs as therein stated, to wit, that "the giving of costs in equity is entirely discretionary." So the ruling of our court from this early day down to the present time in equity cases has been to construe the provisions of the statute to apply only to cases at law, and not to cases in equity. For, in recent cases, we have held (quoting syllabus) "costs in equity are apportioned according to what the court regards as the applicable equitable principle." *Paving District No. 5* v. *Fernandez,* 144 Ark. 550; see also *Fry* v. *White,* 132 Ark. 606; *Penix* v. *Pumphrey,* 125 Ark. 332.

Mr. Freeman, in his note to *Saunders* v. *Frost,* 16 Am. Dec. p. 394, at page 405, has an excellent statement of the rule in equity as it obtains generally and in this State. Says he: "In suits in equity the allowance or disallowance of costs depends largely on the facts and circumstances of each particular case, and rests entirely within the discretion of the court, to be exercised upon principle, and with reference to the general rules of practice, and as equity may require. *Prima facie,* the prevailing party is entitled to costs, and it is incumbent upon the losing party to show the existence of circumstances sufficient to overcome the *prima facie* claim of the prevailing party; and if circumstances are proved which

show that it would be inequitable to compel the unsuccessful party to pay costs, the court may, in the exercise of a sound judicial discretion, refuse costs to either party, or it may impose the same upon the prevailing party.''

Now ''costs'' mean ''expenses pending the suit as allowed or taxed by the court.'' *Corey* v. *Decker,* 52 Ark. 103; *Collins* v. *State,* 57 Ark. 209; *Philpot* v. *Jefferson County,* 66 Ark. 243. In the last case cited, at page 247, we said: ''Costs are an incident to all actions. An action cannot be prosecuted without it.''

Section 2205 of C. & M. Digest confers power upon chancery courts ''to adopt such rules as may be found necessary for the conduct and determination of business in chancery in conformity with the rules and practice governing such courts.'' Section 4580 provides that ''masters in chancery shall be allowed a reasonable compensation for any services that may be required of them, the amount of such compensation to be audited and allowed by the court requiring such services.''

When these statutes, giving the chancery court power to appoint masters in chancery, and to fix a reasonable compensation for their services, and to adopt rules necessary for the conduct and determination of chancery causes in conformity to the rules and practice in such courts, are considered in connection with our decisions in *Temple* v. *Lawson* and other cases, the conclusion, it seems to us, is irresistible that the chancery court in this State has jurisdiction to appoint a master in chancery, to fix his compensation, and to require the parties litigant, where he deems the circumstances justify it, to provide security for the master's compensation to be paid as the court shall determine upon final adjustment and allotment. This discretionary power lodged in the chancery court to provide security, in advance, for the payment of the master's compensation as a necessary part of the costs of the litigation, logically follows because there is no express statute providing when, how, and by whom, the master's compensation shall be paid. The

rule, of course, should not apply to the other costs of litigation where there are express statutory provisions covering the same, and where the officers of the court, under the statute, may protect themselves in connection with fees allowed by law for services rendered, as in the case of sheriffs and clerks. These officers, in civil cases where the State and county are not plaintiffs, as to resident litigants may, if they so elect, require their fees for services rendered such litigants in advance. Sections 4574 and 4591, C. & M. Digest. And in cases of nonresident plaintiffs, or corporations other than banks created by the laws of this State, the statute provides security for costs in advance. Section 1844, C. & M. Digest. But there are no statutes to cover payment of the compensation for masters in chancery for services rendered. Hence, the chancery court, under its general discretionary powers to adjust and allot costs, may adopt reasonable rules to protect and secure their masters in the payment of the compensation for their services allowed as a necessary part of the costs of the litigation.

As the above authorities show, the discretionary power of the chancellor over costs is not absolute and unlimited, but is subject to control and correction by this court when it has been abused. When a chancery court exercises its power in an arbitrary and unreasonable manner and not according to equitable principles, then it abuses the discretion lodged therein, and this court, in proper proceedings, will review and correct the errors in the rulings of the chancery court. See *Penix* v. *Pumphrey, supra; Fry* v. *White, supra.*

3. Since it was within the discretion of the chancery court to require parties litigant to provide security for the compensation of the master, the court having exercised such discretion, the remedy of mandamus cannot be invoked to correct the ruling of the chancery court in requiring such security, even if it were conceded that, under the circumstances of the case, the chancery court had abused its discretion in the ruling. In the case of *Gunn's*

*Admr.* v. *County of Pulaski,* 3 Ark. 427, we held, quoting syllabus: "Where an inferior tribunal has a discretion, and proceeds to exercise it, that discretion cannot be controlled by mandamus; but, if it refuses to act or exercise the discretion, a mandamus lies to put it in motion." That rule has been consistently adhered to by this court from that day until the present time.

Among the earlier cases so holding is that of *Union County* v. *Robinson,* 27 Ark. 116, and among the later cases so holding see *Callaway* v. *Harley,* 112 Ark. 558, and cases there cited. The cases are collated in 3rd Crawford's Digest, pp. 3343 and 3344. The record shows that, after the chancery court had refused to modify its order of May 10, 1925, requiring the parties litigant to make a cash deposit, or bond in lieu thereof, to secure the payment of the master's compensation, the petitioner asked, and was permitted, to withdraw the sum of $300 which he had deposited with the clerk for that purpose, and the petitioner announced that he would not comply with the order of the court. Whereupon the court ordered that no further steps be taken in the cause until the plaintiff complied with its order. The petitioner has applied to this court for a writ of mandamus to compel the lower court to proceed, without alleging that he was financially unable to comply with the order of that court, and without alleging that he could not make the bond required by the court's order. The entire proceedings, in their last analysis, resolve themselves into a petition to have this court correct, by writ of mandamus, what the petitioner conceives to be the errors of the trial court in appointing a master to state an account, and in ordering the parties litigant to provide security for the payment of the master's compensation.

It follows from what we have said that mandamus is not the petitioner's remedy to correct these alleged errors in the rulings of the trial court. Mandamus is not a writ of right, but is one which the courts in their discretion may issue or withhold. Nevertheless, where the

party seeking it has a specific legal right, and no other specific legal remedy for the enforcement of such right, he is entitled to the writ. Where such is the case, the court abuses its discretion if it refuses to grant the relief sought. A party, to be entitled to the writ of mandamus, must show a clear legal right to the subject-matter, and that he has no other adequate remedy. *Snapp* v. *Coffman,* 145 Ark. 1; *Stephens* v. *Humphrey,* 145 Ark. 172-178. See also *Patterson* v. *Collison,* 135 Ark. 105, 111. Such is not the case here. The writ therefore is denied, and the petition therefor is dismissed.

HART, J., (concurring). It has been the recognized practice of courts of chancery to refer a cause involving long and complicated accounts to a master. The reason is that the manifold duties of the chancellor, the public interest, and the rights of litigants may prevent a detailed examination by the court of intricate and complex accounts. The labors of a judge of a court of equity may be materially lightened by referring the consideration of a long account to a master, who is directed to investigate the same and report his opinion to the court. The general rule is recognized by § 7153 of Crawford & Moses' Digest, which provides that all matters of accounts pending in chancery may be referred by the court to a master, and he shall audit and adjust the same, and make report thereof to the court.

In *Bryan* v. *Morgan,* 35 Ark. 113, it was said that, in complicated transactions, justice cannot well be done without reference.

Again in *Carr* v. *Fair,* 92 Ark. 359, it was recognized that a master may be appointed by the court on its own motion and without the consent of the parties. If the court has the power to order a reference on its own motion, it follows as a necessary incident that it might make provision for the payment of the master's fee in whole or in part in advance. The master is the assistant to the court, and it would be unreasonable that he should wait until the end of a protracted litigation before receiving any part of his compensation. It would be un-

seemly that he should receive any part of it from one
of the parties without the sanction of the court. The
whole matter of the costs of the case, including the mas-
ter's fee, could be settled upon the final decree, and, if
the chancellor should err in the matter, his action could
be reviewed along with the other proceedings in the case
upon appeal.

McCULLOCH, C.J., (dissenting). It seems to me
that, notwithstanding the lengthy discussion and the
great array of authorities in the opinion of the majority,
this case is reduced to the simple question whether or
not the chancery court had the power to compel appel-
lant, as a condition upon which he would continue the
prosecution of his case, to pay into the registry of the
court the sum of $1,000 and such further sums as the
court might direct during the progress of the trial, to
defray one-half of the expense of the audit of appellee's
account, which appellee himself had requested. If the
court possessed that power, there is no further question
involved, for, if the court had no power to impose such a
condition, then it is proper for this court to compel the
court to proceed with the trial of the cause, as appellant
has no other remedy.

Appellant filed his complaint as a citizen and tax-
payer, alleging that appellee, as a public officer, had
wrongfully withheld large sums of money which should
have been paid into the treasury in excess of the amount
which he is authorized by law to retain as salary and
expenses, and the relief sought was to compel appellee
to pay this excess, alleged to be about $50,000, into the
county treasury. There was an answer filed, and on the
day set for trial appellant came into court, ready to in-
troduce testimony, documentary and oral, in support of
his complaint, and the court, on the motion of appellee,
appointed a "master and auditor" to audit the accounts
of appellee, and ordered that each of the parties pay into
the registry of the court the sum of $1,000 in cash or give
bond for that amount for the payment of the expenses

of the master, and, when appellant refused to comply with that order, the court made another order directing that no further steps be taken in the case until appellant should comply with the court's order by depositing with the clerk of the court the sum of $1,000.

The chancery court, with all of its extraordinary powers and flexible remedies, cannot make the law. It can mold a remedy for any wrong which is irremediable in a court of law, but it cannot impose an unauthorized and burdensome condition upon the right to litigate. The only statute of this State requiring the plaintiff to give a bond for costs is in the case of a nonresident plaintiff. Any litigant must pay the costs which he incurs, and the final judgment of the court in a cause should include an award of costs. The award of costs is a final judgment, and must be rendered at the end of the litigation, not at the beginning or during its progress. Courts of equity are clothed with discretion in awarding the costs between the parties, but the award is nevertheless a final decree, which can only be rendered at the end of the litigation. The court has no authority, statutory or otherwise, to require the payment of costs in advance or give security for costs. No statute is referred to in the brief of counsel or in the opinion of the majority which confers any authority upon the chancery court to require security for costs other than against a nonresident, as provided by statute. Crawford & Moses' Digest, § 1844. The sole justification which the majority find for such a requirement is the statute authorizing the court to appoint a master. I do not think that the statute authorizes the court to make this appointment of its own motion, but it may do so upon the request of either party. At any rate, this appointment was not made by the court of its own motion, but upon request of the appellee. Appellant objected to the appointment, and proposed to proceed with the trial, and was in readiness to introduce his proof. The appointment was made at the sole instance of the appellee himself, and I fail to find any authority for the court to require security from appellant or re-

quire him to pay the expenses until the court has heard the evidence and renders a final decree settling the rights of the parties. The discretionary power of a court of equity in finally awarding the costs does not extend the power of the court so as to authorize it to require security in advance for the payment of the costs. If the chancery court has any such discretionary powers and a litigant must submit to them as a condition of the prosecution of his legal right, then he can never get to this court for relief without complying with the court's order, and the effect is to give the chancery court unrestricted authority in prescribing conditions upon which a litigant may prosecute his right of action. The fact that a litigant may or may not be able to comply with the court's order is unimportant, for, if it is a wrongful or unauthorized imposition, he should not be compelled to submit to it.

It can scarcely be disputed that mandamus is the proper remedy if the order of the chancery court was made without authority. Appellant's refusal to comply with the unauthorized order completely tied his hands, so that he could not proceed with his suit, and he has no remedy other than to compel the court by peremptory mandamus to proceed with the trial. That mandamus is the appropriate remedy in the case of a wrongful refusal of the trial court to proceed has been expressly settled by decisions of this court. *Gilbert* v. *Shaver,* 91 Ark. 231; *Automatic Weighing Co.* v. *Carter,* 95 Ark. 118.

My conclusion is that the order of the chancery court was not merely erroneous, but that it was void, and constituted no justification for the refusal of the court to proceed with the trial, and that the court ought to be compelled by peremptory mandamus to proceed with the trial in the ordinary way. The costs, including the master's fee, can be awarded in the final decree in the exercise of the court's discretion, subject, of course, to a review in this court on appeal.

Mr. Justice SMITH concurs in these views.